SCHWINN CYCLING & FITNESS INC., Sports Group Inc., Schwinn Bicycle Fitness Limited Partnership, Scott USA Inc., and SSG (Europe) S.A., Plaintiffs/Appellants,

v.

Daniel BENONIS, a minor, and Robert Benonis, a minor, by and through their parents and natural guardians William Benonis and Nancy Benonis, and William Benonis and Nancy Benonis individually in their own right, and Guy's Bicycles, Inc., Defendants/Appellees.

No. 97 C 2686.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 18, 1997.

Michael Patrick O'Neil, Freeborn & Peters, Chicago, IL, for Appellant.

Jonathan A. Backman, Rudnick & Wolfe, Chicago, IL, for Robert and Daniel Benonis.

## MEMORANDUM OPINION
## AND ORDER

MAROVICH, District Judge.

Now before the Court is Appellants' Schwinn Cycling and Fitness, Inc., Scott Sports Group Inc., Schwinn Bicycle and Fitness Limited Partnership, Scott USA Inc. and SSG (Europe) S.A. (collectively, "Appellants") appeal pursuant to 28 U.S.C. § 158(a)(1) from an order of the Bankruptcy Court dismissing their adversary proceeding (No. 96 A 1058) brought to enjoin a products liability action filed in Pennsylvania state court by Daniel Benonis, Robert Benonis, William Benonis, Nancy Benonis (collectively with Guy's Bicycles Inc., "Appellees") against Appellants, Debtors Schwinn Bicycle Company and related entities, and certain other parties. Specifically, Appellants contend that the Bankruptcy Court erred in holding: (1) that the amended complaint in the adversary proceeding failed to state a claim upon which relief could be granted, and could not be amended to state a cause of action or basis for relief; (2) that the Bankruptcy Court's comprehensive order authorizing the sale of the Debtors' assets in accordance with the terms of an asset purchase agreement, together with a Plan and its Confirmation Order, did not entitle Appellants to the relief sought in the amended complaint; (3) that

final orders cannot limit the rights of non-parties; and (4) that "related to" jurisdiction is, or most likely is, lacking. For the reasons set forth below, this Court affirms the ruling of the Bankruptcy Court.

## BACKGROUND

The bulk of the relevant facts, as detailed by the Bankruptcy Court, are undisputed by the parties. On October 7, 1992, Schwinn Bicycle Company and eight related affiliates (the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. The Debtors' cases were consolidated and jointly administered. The Debtors remained in possession of their assets and continued in the management of their business as debtors-in-possession. Prior to filing for bankruptcy, the Debtors were engaged in the business of designing, engineering, manufacturing, marketing, and distributing bicycles, including exercise bicycles.

*The Asset Sale*

Pursuant to the terms and conditions of a negotiated Asset Purchase Agreement dated January 19, 1993 ("Asset Purchase Agreement"), Schwinn Bicycle Limited Partnership, then an Illinois limited partnership, agreed to purchase most of the assets of the Debtors ("Acquired Assets") for over $40 million. As part consideration for the Acquired Assets, the Debtors and Schwinn Bicycle Limited Partnership executed a liability assumption agreement dated January 20, 1993 ("Assumption Agreement"). Under the Assumption Agreement, Schwinn Bicycle Limited Partnership agreed to assume certain liabilities and obligations of the Debtors. The liabilities that Schwinn Bicycle Limited Partnership did not contractually assume included any of the Debtors' personal injury liability or any product liability claims arising out of the conduct of the Debtors' business prior to the closing of the asset sale.

The asset sale was approved by the Bankruptcy Court by its Sale Order dated January 19, 1993 ("Sale Order"). The Sale Order authorized the Debtors to sell the Acquired Assets free and clear of liens, claims and encumbrances, in accordance with Section 363 of the Bankruptcy Code. 11 U.S.C.

§ 363(f). The Sale Order also stated that Schwinn Bicycle Limited Partnership was not a successor in interest to the Debtors.[1] The assets purchased by Schwinn Bicycle Limited Partnership were eventually distributed to Schwinn Cycling & Fitness Inc. ("New Schwinn").[2]

A year later, on December 30, 1993, the Debtors' committee of unsecured creditors filed a Second Amended Joint Liquidating Plan (the "Plan").[3] On January 7, 1994, the Bankruptcy Court entered an order confirming this Plan ("Confirmation Order"). The Confirmation Order provided for an injunction enjoining claims against any assets of the Debtors, against any direct or indirect successor in interest to the Debtors, or against any assets of these parties except through the confirmed plan. The injunction bars claimants from, *inter alia,* bringing an action, collecting a judgment, perfecting a lien, or proceeding in any manner that would not conform with or comply with the Plan or Confirmation Order. (Confirmation Order, ¶ 42.) The Bankruptcy Court also authorized an injunction against any personal injury claimant who failed to comply with the mediation procedures required under the Plan.[4] (Confirmation Order, ¶ 45.) A "Personal Injury Claimant" was defined under the Plan as "a Claim resulting from a tort attributable to one of the Debtors and based upon personal injury, product liability, property damage or other similar claims occurring prior to

the Confirmation Date [i.e., January 7, 1994]." (Plan, ¶¶ 1.35, 1.37.)

In conjunction with the confirmation of the Plan, on February 16, 1994, the Bankruptcy Court entered another order setting a bar date to personal injury claims arising between October 7, 1992 and January 7, 1994. Pursuant to this order, the Debtors published notice in several national publications advising any person asserting a personal injury claim arising between October 7, 1992 and January 7, 1994 that they must file proofs of the claim by May 31, 1994 in order to be entitled to receive any distributions under the Plan. Personal injury claims occurring post-confirmation were not provided for by the Plan.

*The Pennsylvania Action*

On April 18, 1996, Daniel Benonis ("Daniel"), William and Nancy Benonis (Daniel's parents), and Robert Benonis (Daniel's brother) (collectively, "Benonises") filed suit in Pennsylvania state court against the Debtors, New Schwinn and related entities ("Pennsylvania Action").[5] Other defendants to the Pennsylvania Action included George Benonis, the owner of the exercise bicycle, and Guy's Bicycles, Inc., the retailer who sold the exercise bicycle to George Benonis. The amended complaint alleges that Daniel was injured on January 28, 1995—over one year after the bankruptcy plan was confirmed—while playing near a model XR–6 exercise bicycle purchased in October 1979

1. Paragraph Q of the Sale Order provided:

    The Buyer is only buying the Purchased Assets and is not a successor in interest to the Debtors, nor does the Buyer's acquisition of the Purchased Assets reflect a continuity of the operations of the Debtors.

2. Following the closing of the sales transaction on January 20, 1993, Schwinn Bicycle Limited Partnership merged with its general partner, Bike G.P., Inc. Those companies were later dissolved to form Schwinn Cycling & Fitness Inc. It is Schwinn Cycling & Fitness Inc. that now possesses the Acquired Assets and other assets involved in the ensuing distributions. For ease and consistency with the Bankruptcy Court's opinion, Schwinn Cycling & Fitness Inc. hereinafter will be referred to as "New Schwinn."

3. As a result, all of the affiliated debtors consolidated into one Illinois corporation. Pursuant to the Plan, there have been three separate pro rata

distributions to unsecured creditors. Although distribution had not yet been completed at the time New Schwinn filed its adversary complaint, the Bankruptcy Court noted that the distributions would be completed by the end of the 1997 year.

4. Paragraph 45 of the Confirmation Order provides:

    The automatic stay provided for under § 362 of the Bankruptcy Code, and the injunction set forth in paragraph 40 of this Order, shall remain in effect after the Effective Date until each Personal Injury Claimant not holding an Allowed Claim shall have complied with the procedural requirements provided for in Article XIII of the Second Amended Plan, and any non-complying Claimant may be denied relief from the automatic stay or from the injunction.

5. The complaint was amended on July 10, 1995.

by Daniel's grandfather, George Benonis, and "sold, distributed, designed, manufactured or otherwise placed in the stream of commerce by" the Debtors and Guy's Bicycles, Inc. The state complaint alleges damages against the Debtors on theories of negligence and strict liability and seeks to impose successor liability [6] on New Schwinn.

*The Adversary Proceeding*

In response to the Pennsylvania action, New Schwinn initiated an adversary proceeding in the Bankruptcy Court to enjoin the Benonises from pursuing their successor liability claims against it. According to New Schwinn, the Benonises' action against New Schwinn violates the Sale Order by seeking to recover from it liabilities specifically retained by the Debtors under the Assumption Agreement and as part of the Plan and Confirmation Order. The Adversary Complaint contained six counts: (1) Count I requested a declaratory judgment that the injunction entered under the Plan and Confirmation Order prevents the Benonises from pursing their state court action; (2) Count II requested a declaratory judgment that New Schwinn cannot be held liable on a successor liability theory because the Sale Order stated that New Schwinn is not a successor in interest to the Debtors; (3) Count III sought to enjoin the prosecution against New Schwinn in the Pennsylvania action pursuant to 11 U.S.C. § 105(a); (4) Count IV requested an injunction pursuant to 11 U.S.C. § 362 enjoining the Benonises from taking any action against New Schwinn relating to the Exercise Bicycle, contending that if the Benonises

successfully recover damages, New Schwinn would be entitled to seek indemnification from the Debtors, subjecting the Debtors' estate to liabilities; (5) Count V requested an injunction pursuant to the Bankruptcy Court's retained powers under Fed. R.Bankr.P. 3020(d); and (6) Count VI requested a new injunction to enforce the injunctive rights New Schwinn alleges it already possesses. The Debtors were not named as parties to the adversary proceeding and did not seek relief from the Bankruptcy Court from the state action.

On August 22, 1996, the Benonises moved to dismiss the adversary proceeding, arguing that New Schwinn could not prove any set of facts which would permit it to prevail.[7] Specifically, the Benonises maintained that the sale documents and related orders themselves do not provide a basis for terminating the Pennsylvania action because Daniel's injury occurred post-confirmation and even if they purported to do so, they would have violated the Benonises' due process rights.

On March 7, 1997, the Bankruptcy Court dismissed all six counts of the Amended Complaint and the adversary proceeding itself with prejudice. *In re Schwinn Bicycle Co.*, 210 B.R. 747 (Bankr.N.D.Ill.1997). In doing so, Bankruptcy Judge Schmetterer first expressed doubt as to whether the court had subject matter jurisdiction over the adversary proceeding seeking to enjoin the Pennsylvania action since the adversary proceeding did not involve the Debtors or the estate.[8] In any event, the Bankruptcy Court

---

6. The successorship doctrine, which is predominantly a creature of state law, provides an exception to the general rule that a purchaser of assets does not acquire a seller's liabilities. *Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir.1995) (citing *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1424 (7th Cir.1993)). "Most states have adopted exceptions to the general no liability rule that allow creditors to pursue the successor if the 'sale' is merely a merger or some other type of corporate reorganization the leaves real ownership unchanged." *Id.*

7. On September 23, 1996, New Schwinn filed a response and attached numerous pleadings from the Bankruptcy proceedings. On October 2, 1996, the Bankruptcy Court dismissed this response on the ground that New Schwinn had

improperly attached materials to the response to support propositions not raised in the original complaint. New Schwinn then filed an amended complaint with the materials it had attached to its earlier response as an exhibit to the amended complaint.

8. Although the parties did not challenge the Bankruptcy Court's jurisdiction, the court questioned whether it possessed "related to" jurisdiction over the Amended Complaint, which was neither brought by nor against the Debtors or their estate. While "related to" jurisdiction exists where a dispute may affect the distribution of the bankruptcy estate, *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir.1994), the Bankruptcy Court commented that in the instant case the possibility that the Pennsylvania action would have any impact on the bankruptcy was

concluded that it did have jurisdiction to interpret its own orders and found that New Schwinn's amended complaint did not state (nor could it be amended to state) a cause of action because the documents and court orders upon which New Schwinn relied did not, on their face, support a claim entitling New Schwinn to the relief sought.

### DISCUSSION

#### I. *Relevant Standards*

■ In reviewing the decision of a bankruptcy court, this Court acts as an appellate court and applies the same standards of review that govern appellate review in other cases. Accordingly, the Court reviews a bankruptcy court's legal determinations *de novo* and its factual findings using a "clearly erroneous" standard. Here, the question is whether the Bankruptcy Judge erred in dismissing New Schwinn's adversary complaint. Upon appeal, a motion to dismiss granted by a lower court is reviewed de novo. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir.1992).

■ When considering a motion to dismiss, the court tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will be granted where, based upon the pleadings, it appears that the plaintiffs can prove no set of facts to support their claims that they are entitled to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In considering the motion, the Court must accept all pleaded facts as true and draw all reasonable inferences in a light most favorable to the nonmoving party. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir.1992).

#### II. *The Plan and Confirmation Order Do Not Encompass the Injury Claimed in the Pennsylvania Action*

■ A bankruptcy court has jurisdiction to interpret its own orders. *Matter of Specialty Equip. Cos.*, 3 F.3d 1043, 1045 (7th Cir. 1993); *In re Kewanee Boiler Corp.*, 198 B.R. 519, 525 (Bankr.N.D.Ill.1996). "The court's reading of its own order ... is entitled to respect." *Matter of Xonics, Inc.*, 813 F.2d 127, 130 (7th Cir.1987).

■ The crux of New Schwinn's theory of relief, whether stated in one or six counts of the amended complaint, is that the terms of the Sale Order, the Plan and the Confirmation Order entitle it to an injunction barring the Benonises' state court claim. However, as the Bankruptcy Court correctly found, the Benonises' post-confirmation claim falls outside the scope of the injunction entered under these documents and orders.

The Plan and the Confirmation Order provided for an automatic stay of personal injury claims under § 362 of the bankruptcy code until after the "personal injury claimants" complied with certain procedural requirements; it also provided that any noncomplying claimant would be denied relief. (Plan, Art. XIII; Confirmation Order, ¶ 45.) However, these provisions do not apply to the personal injury alleged in the Pennsylvania action because the injuries covered by the Plan were limited to claims arising *prior to* the confirmation date. Under the Plan, a "Personal Injury Claimant" is a holder of a "personal injury claim," which is defined as a "tort attributable to one of the debtors, based upon personal injury, product liability, property damage or other similar Claims occurring *prior to* the Confirmation Date." (Plan, ¶¶ 1.35, 1.37 (emphasis added).) Thus, only claims that arose *before* confirmation of the Plan were provided for by the parties to the bankruptcy.[9] The injury to Daniel Be-

---

subject to many contingencies and "related to" jurisdiction was "tenuous."

Ultimately, however, the Bankruptcy Court found that it retained the power to interpret and enforce its own orders and then ruled on the substance of the Amended Complaint. Accord-

ingly, the Bankruptcy Court's earlier comments regarding "related to" jurisdiction are not a relevant part of this appeal.

**9.** Potential future claimants were not provided for under the Plan, as some courts have suggested, by setting aside funds for future claimants or

nonis did not arise until January 28, 1995—over one year after the January 6, 1994 Confirmation Date. Thus, the Plan's injunction does not apply to, and thus, cannot bar, the Benonises' claim.

■ New Schwinn also attempts to rely on paragraph 42 of the Confirmation Order which provides that "all persons who have held, hold or may hold Claims against any of the Debtors, whether arising prior to or subsequent to the Confirmation Date, ... shall be permanently enjoined ..." from bringing actions against the Debtors or the Debtors' assets, or against "any direct or indirect successor in interest to Debtors ... or any assets of any such transferee or successor." (Confirmation Order, ¶ 42.) New Schwinn argues that, while it is "not a successor to the Debtors for purposes of imposing successor liability under federal or state statutory or common law," it is a successor to the Debtor for the purposes of the injunction provided for in paragraph 42. (Adversary Compl., ¶ 53.) However, as the Bankruptcy Court explained in a detailed analysis of its Confirmation Order, a full reading of the Confirmation Order reveals that the injunction in paragraph 42 was specifically designed to protect the *Debtors'* estates and certain representatives of these estates from lawsuits sought to circumvent the payment provisions of the Plan.[10] Its purpose was not to protect nondebtors or their assets or to affect the rights of persons who might be injured after the confirmation.

This Court concludes that the Bankruptcy Court correctly held that its order confirming the Plan did not contemplate future claimants.

### III. *Bankruptcy Law Does Not Preempt the Benonises' Claim*

. ■ New Schwinn also argues that the Benonises' attempt to impose successorship liability in the Pennsylvania action is contrary to the policies underlying the Bankruptcy Code, which New Schwinn says, preempts state successorship liability. Specifically, New Schwinn maintains that the Sale Order (paragraph Q) provides that New Schwinn is not a successor in interest to the Debtors and insists that allowing state successorship liability claims would undermine the bankruptcy regime by (1) permitting some claimants—such as those who suffer post-confirmation injuries—to receive more than other claimants; and (2) reducing the asset purchase price and thereby frustrating the interests of creditors generally. These arguments, however, are unpersuasive and have been rejected by other courts.

In *Chicago Truck Drivers,* the Seventh Circuit held that the fact that creditors who possess successorship liability claims may receive more than those creditors who do not possess such claims does not require an absolute prohibition of successorship liability claims. 59 F.3d at 51. The Seventh Circuit has also rejected the New Schwinn's second asserted justification for preemption—that allowing successorship liability claims would hamper the bankruptcy court's ability to maximize the sale price of the assets. Specifically, the Seventh Circuit has stated, although in a slightly different context, that extinguishing state law rights in order to increase the value of debtors' property, "would not only [ ] harm [ ] third parties ..., but [would provide an] incentive to enter bankruptcy for reasons that have nothing to do with bankruptcy." *Zerand–Bernal Group,* 23 F.3d at 163.

■ The Bankruptcy Court's finding in the Sale Order that New Schwinn is not a "successor in interest" to the Debtors, was, as the Bankruptcy Court held, directed at forcing existing pre-confirmation personal injury claimants to bring such claims against asset estates. It was not intended to, nor

---

by appointing a representative to protect the interests of future claimants. *See In re Fairchild Aircraft Corp.,* 184 B.R. 910 (Bankr.W.D.Tex. 1995) (suggesting that a bankruptcy court's orders may impact future claims if claimant's interests receive adequate representation in the bankruptcy proceeding and if the orders provide for procedures to anticipate future claims).

**10.** Indeed, Paragraph 42 states, "This injunction is issued ... to preserve and protect assets of and property of the estates, to protect the integrity of the estate and the Second Amended Plan." (Confirmation Order, ¶ 42.)

could it, preempt all possible future successor liability claims. By the same token, the fact that New Schwinn is not a "successor in interest" under the Sale Order does not adjudicate whether, under applicable state law, New Schwinn is liable as a successor of the Debtors in the Pennsylvania action. The Bankruptcy Court, however, is not the proper forum to try this state law issue.

IV. *Because the Benonises Did Not Receive Notice of the Sale or Bankruptcy Proceedings, Their Claim is Not Extinguished*

The Benonises contend that even if the Bankruptcy Court erred in its interpretation of its own orders, the Pennsylvania claim against New Schwinn should not be enjoined because the Benonises did not receive adequate notice of the bankruptcy sale and because the Plan made no specific provision for the payment of post-confirmation personal injury claims. New Schwinn does not dispute that the Benonises did not receive notice of the bankruptcy proceedings. Indeed, no notice could or should have gone out to the Benonises as they did not have an existing claim while the bankruptcy was progressing from the sale of the Debtors' assets through the confirmation of the Plan. The Benonises, however, argue that allowing the Bankruptcy Court to enjoin them from pursuing their state court action would deny them their due process rights.

■ "Notice is the cornerstone underpinning Bankruptcy Code procedure." *Western Auto Supply v. Savage Arms, Inc.,* 43 F.3d 714, 719 (1st Cir.1994); *In re Kewanee Boiler Corp.,* 198 B.R. at 529. Moreover, as the Bankruptcy Court noted, "adequate notice lies at the heart of due process." *Chicago Cable Comm. v. Chicago Cable Comm'n,* 879 F.2d 1540, 1546 (7th Cir.1989) (citation omitted). In bankruptcy, actual notice is only required with respect to known creditors. *Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 974 F.2d 775, 788 (7th Cir.1992). An unknown creditor has been defined as one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge"

of the debtor. *Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3d Cir.1995), *cert. denied,* 517 U.S. 1137, 116 S.Ct. 1424, 134 L.Ed.2d 548 (1996). In this case, the Benonises were unknown creditors possessing no claim during the bankruptcy proceedings. Accordingly, there was likely no notice "reasonably calculated, under all circumstances, to appraise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

■ New Schwinn's attempt to enjoin the Benonises' state court action would, in effect, deny them of their rights to due process. The Benonises did not receive notice of, or opportunity to, participate in the Bankruptcy Court proceedings. That there existed no notice reasonably calculated to reach parties like the Benonises does not lessen the due process implications of New Schwinn's contentions in the adversary proceeding. *See In re Kewanee Boiler Corp.,* 198 B.R. at 529. Allowing the provisions of the Bankruptcy Court's orders to limit the rights of injured parties—like the Benonises—who had no notice, and no reason at the time, to present an interest in the bankruptcy proceedings or to take action in response to the threatened deprivation of their rights, would violate due process and bankruptcy notice concerns. Accordingly, this Court agrees with the conclusion of the Bankruptcy Court, expressed as follows:

> Whatever purposes might be found in the Bankruptcy Code, the Code cannot justify disregarding due process concerns and bankruptcy notice requirements to the detriment of persons affected and the benefit of businesses seeking to eliminate liability while possibly recovering added value for known creditors who receive notice.
>
> 210 B.R. at 760 (citation omitted).

In sum, taking all well-pled facts as true and drawing all reasonable inferences as true, this Court finds that New Schwinn has failed to state a cause of action entitling it to the injunctive relief sought. Accordingly, the Court affirms the ruling of the Bankruptcy Court.

*CONCLUSION*

For the foregoing reasons, this Court affirms the Bankruptcy Court's judgment entered March 7, 1997.