**In re DESA HOLDINGS CORPORATION, et al., Debtors.**

**No. 02–11672 KG.**

United States Bankruptcy Court, D. Delaware.

Oct. 25, 2006.

---

William E. Chipman Jr., Jr., Greenberg Traurig, LLP, Megan E. Cleghorn, Skadden Arps Slate Meagher & Flom LLP, Paula Ann Galbraith, Curtis A. Hehn, Laura Davis Jones, Hamid Reza Rafatjoo, Pachulski Stang Ziehl Young and Jones, PC, Rosalie L. Spelman, Potter Anderson & Corroon LLP, Wilmington, DE, for Debtors.

## MEMORANDUM OPINION [1]

KEVIN GROSS, Bankruptcy Judge.

The Court has before it the Motion of Joshua Ross for (I) Clarification Regarding Stipulation and Agreed Order Lifting Automatic Stay and (II) Determination Regarding Order Approving Sale Free of Liens and Encumbrances ("the Motion"). A sister court has asked parties in litigation before it to seek clarification of an order of this Court, which has given rise to the matter *sub judice.* The underlying legal issue in the state court litigation is whether a buyer of assets is liable on a "successor liability" claim.[2]

### RELEVANT BACKGROUND FACTS AND PROCEDURAL SETTING

DESA Holdings Corporation and DESA International LLC, f/k/a DESA International, Inc. ("Debtors"), filed voluntary bankruptcy petitions for relief in this Court on June 8, 2002. The Court thereafter set a bar date for the filing of pre-petition claims of December 18, 2002 ("Bar Date"), and a bar date for filing administrative claims of April 23, 2004 ("Administrative Bar Date").

In November 2002, Debtors sold substantially all of their assets through an auction process to the highest bidder, HIG—DESA Acquisition LLC, now known as DESA LLC ("Buyer"). The Order (a) Authorizing & Scheduling a Public Auction for Sale of All Debtors' Assets or One of Debtors' Divisions Free & Clear of All Liens Claims & Encumbrances (b) Approving Procedures for Submission of Qualifying Bids (c) Approving Form & Manner of Notice (D.I.224) required Debtors to give notice by mail where practical,

---

1. On April 18, 2006, this case was reassigned to Judge Kevin Gross. The Honorable Peter J. Walsh and later the Honorable Walter Shapero, a visiting judge to this district, presided over the matters which give rise to this Memorandum Opinion.

2. "The ordinary rule of successor liability is rooted in corporate law, and it states that a firm that buys assets from another firm does not assume the liabilities of the seller merely by buying its assets." *Berg Chilling Systems, Inc. v. Hull Corporation,* 435 F.3d 455, 464 (3d Cir.2006). There are exceptions to the general rule: (1) assumption by contract, (2) fraud, (3) where there is a *de facto* merger, (4) continuity of identity between seller and purchaser. *Id.*

and by publication in a nationally circulated newspaper where notice by mail was not practical. Debtors complied, including publication in the national edition of *The Wall Street Journal.* On December 12, 2002, the Court entered an Order (a) Authorizing the Debtors' Sale of Substantially All of Their Assets, Free & Clear of Liens, Claims, & Encumbrances, (b) Approving an Asset Purchase Agreement, (c) Authorizing the Sale, Assumption & Assignment of Certain Executory Contracts & Unexpired Leases in Connection with Such Sale, (d) Granting Superpriority Liens, & (e) Granting Related Relief ("the Sale Order") (D.I.520) which provided, in relevant part:

\* \* \*

B. Notice of the Sale Motion, the Auction, and the Sale Hearing has been given in accordance with Fed. R. Bankr.P.2002, 4001 and 6004 and the Bidding Procedures Order. The foregoing notice constitutes good and sufficient Notice of the Sale Motion and the Sale Hearing, and no other or further notice of the Sale Motion and the Sale Hearing or the entry of this Sale Order need be given.

\* \* \*

G. The transactions contemplated by the Final Asset Purchase Agreement are undertaken by the Debtors and the Buyers at arm's length, without collusion and in good faith within the meanings of sections 363(m) and 364(e) of the Bankruptcy Code, and such parties are entitled to the protections of sections 363(m) and 364(e) of the Bankruptcy Code.

\* \* \*

H. A sale of the Acquired Assets other than one free and clear of Liens would adversely affect the Debtors'

bankruptcy estates and would be of substantially less benefit to the estates of the Debtors.

\* \* \*

2. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to sell the Acquired Assets (including the Assumed Contracts) to the Buyer upon the terms and subject to the conditions set forth in the Final Asset Purchase Agreement, with such modifications as may be agreed to by the parties.

\* \* \*

4. The sale of the Acquired Assets to the Buyer shall be free and clear of Liens (other than Liens created by the Buyer) pursuant to section 363(f) of the Bankruptcy Code, whether known or unknown, including, but not limited to, any of the Debtors' creditors, vendors, suppliers, employees, executory contract counterparties, lessors, customers or users of goods manufactured or sold by the Debtors, and the Buyer shall not be liable in any way (under any theory of successor liability or otherwise) for any claims that any of the foregoing or any other third party may have against any of the Debtors, *provided further that,* except as expressly provided in the Final Asset Purchase Agreement, with regard to employees' claims, the free and clear delivery of the Acquired Assets shall include, but not be limited to, all asserted or unasserted, known or unknown, employment related claims, payroll taxes, employee contracts, employee seniority accrued while employed with any of the Debtors and successorship liability, with any and all valid and enforceable Liens thereon, including those

asserted by the Lenders, shall be transferred, affixed, and attached to the net proceeds of such sale, with the same validity, priority, force, and effect as such Liens had upon the Acquired Assets immediately prior to the Closing.

\* \* \*

10. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, all Persons (as defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against the Buyer or the Buyer's affiliates (as they existed immediately prior to the Closing) to recover any claim which such Person has against the Debtors or the Debtors' affiliates (as then exist immediately following the Closing).

\* \* \*

15. The Buyer has not assumed or otherwise become obligated for any of the Debtors' liabilities other than as expressly set forth in the Final Asset Purchase Agreement, and the Buyer has not purchased any of the Excluded Assets (as defined in the Final Asset Purchase Agreement). Consequently, all holders of liabilities or Claims (as defined in section 101(5) of the Bankruptcy Code) are hereby enjoined from asserting or prosecuting any Claim or cause of action against the Buyer or Acquired Assets to recover an account of any Claim or liabilities other than Assumed Liabilities pursuant to the Final Asset Purchase Agreement or other than pursuant to this Sale Order. All persons having any interest in the Excluded Assets are hereby enjoined from asserting or prosecuting any claim or cause of action against the Buyer for any liability or Claim associated with the Excluded Assets.

(Sale Order at ¶¶ B, G and H, and ¶¶ 2, 4, 10 and 15)

The movant, Joshua Ross ("Movant") was allegedly injured while working on January 15, 2004. The alleged injuries occurred 25 months after the Sale Order, after the Bar Date, and prior to the Administrative Bar Date. Movant alleges that a defective heater which Debtors manufactured caused his injuries. In order to recover for his injuries, Movant on March 11, 2005, filed the Motion to Allow a Late–Filed Claim ("Late Claim Motion") (D.I. 1580) and the Motion for Relief from the Automatic Stay to Pursue Personal Injury Claims ("Lift Stay Motion") (D.I.1581). Debtors informed Movant that they would oppose the Late Claim Motion and the Lift Stay Motion. Movant and Debtors thereafter negotiated a resolution of Movant's Late Claim Motion and Lift Stay Motion, the terms of which were contained in the Stipulation and Agreed Order by and Among the Debtors and Joshua Ross ("Lift Stay Order") (D.I.1608), which the Court approved on March 30, 2005, and which provided, *inter alia,* that "[t]he automatic stay provision of section 362 of the Bankruptcy Code shall be modified for the sole and limited purpose of permitting the Movant to pursue or litigate the Ross claim against the Debtors and any other potentially responsible parties in a non-bankruptcy forum of competent jurisdiction." (Lift Stay Order ¶ 2)

The Lift Stay Order also provided that Movant's recovery against Debtors would be limited to the Debtors' applicable insurance coverage and any other non-debtor party. Movant expressly waived the right to collect any damages from Debtors or Debtors' estates other than from any applicable insurance and agreed that Movant was not entitled to receive any distribu-

tions from Debtors. (Lift Stay Order ¶ 4) Movant also agreed to withdraw the Late Claim Motion.

During the same hearing at which the Court considered and entered the Lift Stay Order, the Court also confirmed Debtors' Second Amended Joint Liquidating Plan of Reorganization ("the Plan") pursuant to which Debtors thereafter liquidated substantially all of their assets.

Armed with the Lift Stay Order, Movant commenced an action on May 11, 2005, in the Superior Court of the State of Delaware in and for New Castle County ("the Delaware Superior Court") in a case captioned *Joshua Ross v. DESA Holdings Corporation, et al.,* Case No, 05–C–05–13 MMJ ("the Delaware Superior Court Action I"). The defendants included Debtors and others, but not Buyer. Nine months later, on January 17, 2006, Movant commenced a second action in the Delaware Superior Court captioned *Joshua Ross v. DESA, LLC, DESA Heating, LLC, et al,* C.A. No. 06–C–01–172–MMJ ("the Delaware Superior Court Action II"). In this second action, Movant named Buyer as a defendant, claiming Buyer and an affiliate were liable for Movant's injuries "for the acts and omissions of the predecessor entities [Debtors] as having expressly assumed [Debtors'] liabilities or assumed the liabilities through a *de facto* merger." (Delaware Superior Court Action II Complaint ¶ 5)

Buyer moved to dismiss the claims against it in the Delaware Superior Court Action II on the ground, among others, that the Sale Order precluded Buyer's liability for any claim that a user of Debtors' goods might have against Debtors. At oral argument on the Buyer's motion to dismiss, the Delaware Superior Court expressed uncertainty with this Court's Lift Stay Order. The transcript of the argument held on May 15, 2006, includes the following discussion by the Delaware Superior Court:

I agree, there is no question that there is a very compelling public policy reason for the purchaser being able to purchase the assets free and clear of all claims. I agree with that.

And what I think I am going to find here today is that indeed, the Court, the bankruptcy court was very clear in its order, and I want to get the right date. Oh, actually, that order was signed by Judge Walsh, December 12, 2002.

The bankruptcy court was very clear in that order that the buyer acquired the assets free and clear of liens, including, under theories of successor liability or otherwise.

So that is clear.

What is not clear to me is whether or not the stipulation and agreed order signed by Judge Shapiro *[sic]* on March 30, 2005, and I'm specifically referring to paragraph 2, whether or not Judge Shapiro *[sic]* intended that the automatic stay be lifted with regard to the buyer for purposes of this particular plaintiff, because it includes the language, "pursue or litigate the Ross claim against the debtors and any other potentially responsible party in a non-bankruptcy forum of competent jurisdiction."

And the reason I'm unclear on that is because it would be a limited lifting of the automatic stay with regard to one claimant, and also because the language is so broad.

So therefore, what I'm going to ask the parties to do is to refer that very narrow issue to the bankruptcy court for its determination, and that way the Court will be in a better position to assess the motion to dismiss.

(Hearing Transcript, 38–39, May 15, 2006)

It is the Delaware Superior Court's concern over a "very narrow issue," specifical-

ly, whether this Court intended the Lift Stay Order to give relief from the stay "with regard to [Buyer] for purposes of [Movant]" which the Court now addresses. As discussed below, the Court will not provide an advisory opinion, particularly where as here, the law of the state in which the litigation is pending applies. The Delaware Superior Court's inquiry concerning the Lift Stay Order does not require an advisory opinion unlike the Movant's request for clarification regarding the Sale Order.

## ISSUES BEFORE THE COURT

### a. The Delaware Superior Court's Statement of the Issue

The Delaware Superior Court confined the issue which it submitted to the parties for clarification to this: "... whether or not the stipulation and agreed order signed by Judge Shapiro [sic] on March 30, 2005, and I'm specifically referring to paragraph two, whether or not Judge Shapiro [sic] intended that the automatic stay be lifted with regard to the buyer for purposes of the plaintiff...." (Hearing Tr., 38, May 16, 2006)

### b. Movant's Statement of the Issues

Movant's request for clarification goes beyond the narrow issue raised by the Delaware Court. Movant has requested that the Court enter an Order:

> "[C]larifying that the [Lift Stay Order] was intended to permit [Movant] to pursue his claim against the DESA Defendants, as successor in interest to the DESA Debtors. Further, [Movant] seeks a clarification that the Sale Order was of no effect as to [Movant] insofar as he was not provided with notice of the sale to the DESA Defen-

dants or the opportunity to meaningfully participate in the Plan."

(Movant's Motion for Clarification, 5)

Movant thus argues that the language of the Lift Stay Order and the absence of notice to Movant of the Sale Order combine to preclude the application of the provisions of the Sale Order to Movant, which would otherwise protect Buyer from any claim arising from the goods it purchased from Debtors. The basis of Movant's assertion is that because he allegedly sustained his injuries after the entry of the Sale Order, he did not receive notice of the motion for the sale of Debtors' assets and therefore cannot be bound by its terms, including the provisions barring claims against the Buyer arising from Debtors' potential liability. In addition, Movant asserts that the terms of the Lift Stay Order expressly gave Movant the right to proceed against Buyer as "the successor in interest" to Debtors.

### c. Buyer's Statement of the Issue[3]

The issue as framed by Buyer is this: Does the Lift Stay Order permitting Movant to pursue his claim against Debtors and any other potentially responsible parties in a non-bankruptcy forum of competent jurisdiction amend, modify or negate this Court's Sale Order, including the protections it afforded Buyer?

## DISCUSSION AND DECISION

■ It is very tempting for the Court to leap into a scholarly discourse on the relationship between § 363 of the Bankruptcy Code and the complexities of a buyer's liability as a successor to the debtor-seller. Doing so would be a self-indulgent excess, because the issue which the Delaware Superior Court raised does not require the

---

**3.** The Plan Administrator, as Debtors' successor pursuant to the Plan, has filed a Limited Response which does not state a position on the Motion but which supports the Buyer's position.

Court's dissertation on a buyer's successor liability. Furthermore, the Court must be careful not to render an advisory opinion. In *Zisholtz v. Goldstein (In re Martin's Aquarium, Inc.)*, 98 Fed.Appx. 911, 2004 WL 1012814 (3d Cir.2004), the Third Circuit Court of Appeals expressed serious concern that a bankruptcy court would reopen a case for the limited purpose of opining on the effect of an order in a subsequent state court litigation. The Court of Appeals observed that: "Evidently, the [requesting parties] were dissatisfied with the initial interpretations of that decision taken by the Pennsylvania state courts and sought therefore to enlist the aid of the Bankruptcy Court to aid their arguments in the state litigation." *In re Martin's Aquarium, Inc.*, 98 Fed.Appx. at 913.

The Court of Appeals found that the legal issue rested on state law and that "[a] bankruptcy court—or any federal court—should not provide advisory opinions for state court litigants." *Id. See also, In the Matter of FedPak Systems, Inc.*, 80 F.3d 207 (7th Cir.1996), (holding that the bankruptcy court lacked jurisdiction to issue a clarification order). In *FedPak*, as here, the dispute did not involve the amount of property for distribution or the allocation of assets among creditors and therefore the dispute did not qualify as "related to" jurisdiction under 28 U.S.C. § 1334(b).

Furthermore, this Court will not invade the province of the learned Delaware Superior Court which stated unequivocally: "And what I think I am going to find here today is that indeed, the Court, the bankruptcy court was very clear in its order the buyer acquired the assets free and clear of liens, including under theories of successor liability or otherwise. So that is clear." (Hearing Tr., 38, May 16, 2006)

Faced with Buyer's assertion that the Sale Order precludes Buyer's liability under a successor liability claim, Movant has now reframed the Delaware Superior Court's request for clarification by seeking this Court's ruling on whether Movant is bound by the Sale Order.

### a. The Lift Stay Order

■ First, to address the Delaware Superior Court's concern, the Lift Stay Order by its very nature governs only Debtors. It is a tenet of bankruptcy law that the automatic stay provisions of § 362 of the Bankruptcy Code apply only to debtors and do not prevent litigation from proceeding against non-debtors. *Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207 (Bankr.D.Del.1995). As this Court held in *In re Conference of African Union First Colored Methodist Protestant Church*, "the automatic stay is not available to non bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor." *Id.* at 214 (quoting *Maritime Electric Co. Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3rd Cir.1991)). Here, Movant was free without an order of this Court to proceed against non-debtor individuals and/or entities, including the Buyer. The Lift Stay Order was not applicable to Buyer because there was no stay in place and therefore Movant was already free to bring suit against Buyer.

The Lift Stay Order therefore applied to and affected only Debtors' rights. The Lift Stay Order did not authorize the Movant to proceed against Buyer, and did not provide Movant with rights beyond authorizing Movant to bring suit against Debtors. The provision of the Lift Stay Order which prevents Movant from collecting from Debtors indicates to the Court that the parties understood that Movant was

looking toward any insurance coverage Debtors might have for a monetary recovery. Movant did not seek and the Lift Stay Order did not grant any modification of the Sale Order, because the Lift Stay Order did not apply to Buyer.

Movant argues that the inclusion of language in the Lift Stay Order permitting Movant to pursue "any responsible party" applied to Buyer. However, Buyer was not a party to the stipulated Lift Stay Order. In neither its papers nor at argument did Movant claim that it negotiated the Lift Stay Order with the intent of pursuing a claim against Buyer, and Debtors specifically disclaim any intention to alter Buyer's protection against any successor liability claim. Buyer was a known entity, not "any responsible party." For Movant to prevail in claiming that the Lift Stay Order applied to Buyer and nullified the express language of the Sale Order, the Lift Stay Order would have had to specify that it applied to Buyer and modified the Sale Order. It did not.

The belated action against Buyer, combined with the absence of any indication that the Lift Stay Motion was directed toward Buyer belies Movant's assertion that the term "any responsible party" in the Lift Stay Order included Buyer. Instead, the Court is persuaded by Debtors' assertion that:

> It was certainly never specifically discussed that [Movant] would pursue the Ross Claim against [Buyer].... As a result thereof, it was never the intent of the parties for the [Lift Stay Order] to amend, modify or in any way affect the Sale Order as may apply to the Ross Claim.

(Debtors' Limited Response to Motion for Clarification, 8). If Movant had, in fact, intended for the Lift Stay Order to vitiate Buyer's protection from successor liability for the acts of Debtors, Movant never communicated that intention to anyone and certainly not to the Court. Moreover, had Movant truly intended that the Lift Stay Order was what he needed to proceed against Buyer, he would have named Buyer as a defendant in Delaware Superior Court Action I.

In summary, this Court finds that: (1) the Lift Stay Order was not necessary to prosecute a claim against Buyer, (2) having obtained the Lift Stay Order, Movant still did not pursue Buyer, (3) there was no mention of Buyer in the negotiations leading to the Lift Stay Order, (4) the Lift Stay Order does not name Buyer and (5) Movant did not object to the Confirmation Order which ratified the injunctive relief to Buyer under the Sale Order. These findings establish conclusively that the Lift Stay Order did not in any way amend or modify the Sale Order. The Court concludes therefore that Movant's effort to impose successor liability on Buyer through the Lift Stay Order is an afterthought which neither the Court nor the parties contemplated.

### b. The Delaware Court Litigation

The litigation giving rise to the Motion is not before the Bankruptcy Court. Instead, the Motion is related to and necessitated by Movant's lawsuits pending in the Delaware Superior Court for Movant's injuries sustained in an accident in Delaware. The Delaware Superior Court requested clarification, but not of the Sale Order. The clarification that the Delaware Court seeks is confined to the consequences and meaning of this Court's Lift Stay Order. It is highly significant to the Court's analysis that the Delaware Superior Court has not requested the Bankruptcy Court's findings or legal conclusions regarding the Sale Order and its impact on Movant. Rather, it is the Movant who now asks this Court to rule that the Sale

Order is not binding on Movant's right to pursue litigation against Buyer.

The Delaware Court's defining of this issue is all together appropriate because the applicable law to which the capable Delaware Court will apply the facts is Delaware law, not federal law. *See Schwinn Cycling & Fitness, Inc. v. Benonis,* 217 B.R. 790 (Bankr.N.D.Ill.1997) (explaining that the successorship doctrine is predominately a creature of state law); *Cf. Conway v. White Trucks,* 885 F.2d 90 (3rd Cir.1989) (applying Pennsylvania law on the issue of successor liability). Delaware courts recognize successor liability as a viable legal theory and, as well, that there are exceptions to the general principle that purchasers of assets do not succeed to a seller's liability. *Corporate Property Associates 8, L.P. v. Amersig Graphics, Inc.,* 1994 WL 148269, 1994 Del. Ch. LEXIS 45 (Del. Ch.1994). Accordingly, the Delaware Superior Court has jurisdiction to rule on whether successor liability claims against Buyer are viable under Delaware law.

Since Movant's claim arose after the Bar Date but before the confirmation of the Plan, it was subject to this Court's Sale Order. *See generally In re White Motor Credit Corp.,* 75 B.R. 944 (Bankr.N.D.Ohio 1987). By withdrawing his Late Claim Motion, Movant waived his opportunity to participate in the bankruptcy case in exchange for a clear path to litigate against Buyer. The Court cannot ignore the fact that immediately after the Court entered the Lift Stay Order, Movant filed suit against Debtor and did not file a separate lawsuit against Buyer and others for approximately nine months. Movant's complaint that he was unable to participate in the bankruptcy case is not compelling because it was his choice to compromise his Late Claim Motion which, if successful, would have enabled him to participate in the bankruptcy case and to object to the applicability of the Sale Order.

### CONCLUSION

The Court concludes that the Lift Stay Order did not amend, modify or negate the Sale Order. Movant's arguments for the inapplicability of the Sale Order are properly before the Delaware Superior Court for decision and it would be wholly improper for this Court to rule on such issues.

An appropriate order follows.

***ORDER REGARDING THE MOTION OF JOSHUA ROSS FOR (I) CLARIFICATION REGARDING STIPULATION AND AGREED ORDER LIFTING AUTOMATIC STAY AND (II) DETERMINATION REGARDING ORDER APPROVING SALE FREE OF LIENS AND ENCUMBRANCES***

For the reasons set forth in the Memorandum Opinion of even date herewith, the Court finds that the Lift Stay Order did not amend, modify, or negate the Sale Order. **IT IS THEREFORE ORDERED** that Motion of Joshua Ross for (I) Clarification Regarding Stipulation and Agreed Order Lifting Automatic Stay and (II) Determination Regarding Order Approving Sale Free of Liens and Encumbrances is **DENIED** to the extent that it seeks a determination regarding the Sale Order entered December 12, 2002.