J-A13033-20

2020 PA Super 266

| | | |
|---|---|---|
| WILLIAM KORNFEIND, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NEW WERNER HOLDING CO., INC. & | : | |
| THE HOME DEPOT, INC., | : | |
| | : | |
| Appellants | : | No. 2398 EDA 2019 |

Appeal from the Orders Entered April 18, 2019
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): August Term, 2015, No. 04581

BEFORE:   BENDER, P.J.E., LAZARUS, J. AND STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:                    **FILED NOVEMBER 09, 2020**

New Werner Holding Co., Inc. (New Werner) and The Home Depot, Inc. (Home Depot) (collectively, Defendants) appeal by permission pursuant to 42 Pa.C.S. § 702(b) and Pa.R.A.P. 1311(b) from the interlocutory orders entered April 18, 2019, which denied Defendants' motions for summary judgment in the product liability and negligence case filed against them by William Kornfeind.   We reverse the order denying summary judgment to Home Depot and affirm the order denying summary judgment to New Werner.

**Background**

Kornfeind is a lifelong resident of Illinois.   On September 6, 2013, Kornfeind was standing on a 28-foot fiberglass extension ladder performing maintenance on his home in Illinois.   According to Kornfeind, the ladder slid

_____

*Retired Senior Judge assigned to the Superior Court.

or telescoped downward, causing him to fall and sustain severe injuries that rendered him a quadriplegic.

The ladder was manufactured in Illinois in 1995 by Werner Co. f/k/a R.D. Werner Co., n/k/a Old Ladder Co. (Old Ladder Co.). Old Ladder Co. filed for bankruptcy in 2006, and in 2007, an investor group New Werner Holding Co., Inc. (New Werner) purchased certain assets of and assumed certain liabilities from Old Ladder Co. New Werner is a Delaware corporation with corporate headquarters in Greenville, Pennsylvania.[1] Although Kornfeind admits he is not positive as to the retailer, Kornfeind believes he purchased the ladder from Home Depot, Inc. (Home Depot) in the late 1990s. The parties do not agree where the ladder was designed, with Kornfeind pointing to evidence that the ladder was designed in Pennsylvania and New Werner insisting it was designed in Illinois.

Kornfeind commenced the instant matter in the Philadelphia County Court of Common Pleas via a writ of summons on September 3, 2015. Initially, the case was placed in deferred status due to Old Ladder Co.'s bankruptcy. In 2016, a federal bankruptcy court granted Kornfeind relief from the automatic stay, and in 2017, the instant litigation resumed following the trial court's order returning the case to active status. Kornfeind filed a complaint on May 26, 2017, which he later amended on

---

[1] Counsel for New Werner informed this Court at oral argument that New Werner moved its corporate headquarters to Illinois at some point during the course of this litigation.

July 19, 2017. The amended complaint alleged strict product liability and negligence claims against New Werner and Home Depot related to the design, manufacture, and sale of the ladder.[2] Following discovery, Defendants each filed a motion for summary judgment. The trial court denied both motions by orders entered April 18, 2019.

Defendants moved to certify the denial orders as interlocutory orders immediately appealable by permission pursuant to 42 Pa.C.S. § 702(b), but the trial court denied the motions. Defendants sought recourse in this Court by filing a joint petition for review pursuant to Pa.R.A.P. 1311(b). On August 23, 2019, this Court granted Defendants' joint petition for review and permitted Defendants' appeal to proceed.[3]

**Standard of Review**

We consider Defendants' issues on appeal regarding the denial of summary judgment mindful of the following.

> Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is well-settled:
>
> > A reviewing court may disturb the order of the trial court only where it is established that the court

---

[2] Kornfeind also brought claims against Sears Roebuck & Co. and Menards, Inc., but those entities were dismissed with prejudice via stipulation. He also brought claims against Old Ladder Co., but that entity no longer exists after New Werner purchased its assets.

[3] Defendants and the trial court complied with Pa.R.A.P. 1925.

committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof of an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Oberdick v. TrizecHahn Gateway, LLC*, 160 A.3d 215, 219 (Pa. Super. 2017) (citing *Thompson v. Ginkel*, 95 A.3d 900, 904 (Pa. Super. 2014)).

**Claims Against Home Depot**

We begin with addressing the claims against Home Depot to facilitate ease of disposition. Home Depot argues that the trial court erred in denying Home Depot's motion for summary judgment because its only potential relationship to the matter is a possible sale of the alleged defective ladder. It contends Kornfeind did not set forth sufficient evidence to demonstrate that he bought the ladder from Home Depot, citing Kornfeind's statement that he "wasn't sure" where he bought it, and that it could have been one of three retailers, but he was "almost positive" it was Home Depot.

- 4 -

Defendants' Brief at 54 (citing Kornfeind Deposition, 5/8/2018, at 135-36.).

Home Depot argues that the trial court has a duty to prevent the jury from deciding a question based upon a guess or conjecture. *Id.* at 55.

As this Court has explained, notwithstanding the need to view the record in the light most favorable to the non-moving party,

> [a] plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor. *Juliano v. Johns–Manville Corp.*, [611 A.2d 238, 239 (Pa. Super. 1992)] (stating that "[i]n the absence of sufficient evidence demonstrating that plaintiff worked with or near the asbestos materials of a particular defendant, a jury cannot find, except by speculation, that it was a defendant's product which caused plaintiff's injury. Speculation, however, is an inadequate basis for recovery."). A jury is not permitted to find that it was a defendant's product that caused the plaintiff's injury based solely upon speculation and conjecture; "there must be evidence upon which logically its conclusion must be based." *Farnese v. Southeastern Pennsylvania Transp. Authority*, [487 A.2d 887, 890 (Pa. Super. 1985)]. "In fact, the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Id.* at 890. Additionally, a party is not entitled to an inference of fact that amounts merely to a guess or conjecture. *Flaherty v. Pennsylvania Railroad Co.*, [231 A.2d 179, 180 (Pa. 1967)].

*Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 568 (Pa. Super. 2014).

The trial court did not address directly the issue of whether Kornfeind established claims against Home Depot based upon its sale of the ladder, although it referred to Home Depot as the seller of the ladder in its Rule 1925(a) opinion. *See* Trial Court Opinion, 12/5/2019, at 2. In support of his claims on appeal, Kornfeind points to his testimony that he "remember[s] buying ladders at Home Depot that were Werner ladders,"

Home Depot is his "choice a hundred percent for buying things," and he is "almost positive" he bought the ladder at Home Depot. Kornfeind's Brief at 79-80 (citing Kornfeind Deposition, 5/8/2018, at 135-37, 141-42).

Our review of Kornfeind's deposition reveals the following testimony. Kornfeind admitted that when he filed the lawsuit, he "wasn't sure where [he] bought the ladder." Kornfeind Deposition, 5/8/2018, at 135. At the time of his deposition, Kornfeind was "almost positive" he bought the ladder at "a Home Depot" but admitted he was not "certain." *Id.* Kornfeind also testified that Menards and Sears sold ladders in his town, a fact of which he was aware because he "spen[t] a lot of time in hardware stores." *Id.* at 141-45. Although he did not recall buying a ladder at Sears "because their prices are higher," Kornfeind acknowledged that "probably" bought a ladder at Menards at some point in his life. *Id.*

Kornfeind testified that he had bought only one extension ladder in his life. *Id.* He remembers buying "ladders at Home Depot that were Werner." *Id.* When asked if he was "aware of any facts … to support the claim that … [he] bought [the extension ladder] from Home Depot," Kornfeind responded,

> [t]he way I have always said it was Home Depot is my choice a hundred percent for buying things, but I don't have any facts or proof. I don't know if I used the word facts but I don't have any proof that I bought it at a Home Depot.

*Id.* Specifically, Kornfeind did not have a sales receipt, a memory of an associated purchase, or any other corroborating fact to prove that he purchased the ladder at Home Depot. *Id.*

In short, Kornfeind offers no evidence to prove that he purchased the ladder at issue at Home Depot except his own testimony, but even when viewed in the light most favorable to him, his testimony is equivocal and uncertain. To find it was a ladder sold by Home Depot that caused Kornfeind's injuries would require the jury to use "conjecture, surmise, guess or speculation." **Krauss**, 104 A.3d at 568. Accordingly, we conclude that the trial court erred by denying Home Depot's motion for summary judgment.

## Application of Illinois's Statute of Repose Through Pennsylvania's Borrowing Statute to the Strict Liability Claim Against New Werner

Having resolved the claims against Home Depot, we now proceed to address the issues presented by New Werner. Its first issue concerns Pennsylvania's borrowing statute and the Illinois Statute of Repose. Illinois has a statute of repose regarding product liability, but Pennsylvania does not have an analogous statute. The relevant subsection of Illinois's statute of repose provides as follows.

> (b) Subject to the provisions of subsections (c) and (d) no product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly has warranted or promised the product for a longer period and the action is brought within that period.

735 ILCS 5/13-213(b) (effective 1/01/1991 to 3/8/1995).[4] The parties agree that if Illinois's statute of repose applies, Kornfeind's strict product liability claims would be time-barred.[5] **See** Defendants' Brief at 13; Kornfeind's Brief at 78.

New Werner contends that pursuant to Pennsylvania's borrowing statute, 42 Pa.C.S. § 5521, Pennsylvania is required to "borrow" and apply Illinois's statute of repose. According to New Werner, Pennsylvania's borrowing statute applies to statutes of repose, despite the trial court's holding that it only applies to statutes of limitation. Defendants' Brief at 14-20.

---

[4] The Illinois legislature enacted Public Act 89-7, which was known as the Tort Reform Act, in 2005. **Cassidy v. China Vitamins, LLC**, 89 N.E.3d 944, 950-51 (Ill. App. 2017). Public Act 89-7, *inter alia*, amended subsection 5/13-213(b) to provide that the statute of repose applied to any product liability action under "any theory or doctrine," as opposed to the prior version, which made the statute of repose applicable only to product liability actions under "the doctrine of strict liability in tort." **Compare** 735 ILCS 5/13-213(b) (effective 1/01/1991 to 3/8/1995) **with** 735 ILCS 5/13-213(b) (effective 3/8/1995). In 1997, the Illinois Supreme Court "held that Public Act 89-7 was void in its entirety because certain core provisions of the act were contrary to the Illinois constitution and were not severable from the remaining provisions of the act." **Cassidy**, 89 N.E.3d at 950-51. Under Illinois law, when an act is declared "unconstitutional in its entirety, the state of the law is as if the act had never been enacted, and the law in force is the law as it was before the adoption of the unconstitutional amendment." **Id.** Accordingly, the pre-1995 version of subsection 5/13-213(b) is applicable to this case, **see id.**, and it is the version to which we cite above.

[5] Because both Pennsylvania and Illinois have a two-year statute of limitations, and Kornfeind brought his claims within two years of the incident, neither Pennsylvania nor Illinois's statute of limitations poses an obstacle to Kornfeind's action.

- 8 -

Pennsylvania's "borrowing statute" provides as follows.

§ 5521. Limitations on foreign claims

(a) Short title of section. -- This section shall be known and may be cited as the "Uniform **Statute of Limitations** on Foreign Claims Act."

(b) General rule. -- The **period of limitation** applicable to a claim **accruing** outside this Commonwealth shall be either that provided or prescribed by the law of the place **where the claim accrued** or by the law of this Commonwealth, whichever first bars the claim.

(c) Definition. -- As used in this section "claim" means any right of action which may be asserted in a civil action or proceeding and includes, but is not limited to, a right of action created by statute.

42 Pa.C.S. § 5521 (emphasis added).

New Werner interprets the statute to include statutes of repose under the phrase "period of limitation." Defendants' Brief at 16-20. New Werner relies heavily on a statement by our Supreme Court that the purpose of the borrowing statute is to "unequivocally ... prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose." Defendants' Brief at 20-23 (citing *Gwaltney v. Stone*, 564 A.2d 498, 501 (Pa. 1989)). New Werner criticizes the trial court's reliance upon the short title of the statute, emphasizing that it is not controlling. *Id.* at 22. It cites to cases from a myriad of other states that have interpreted their respective state's borrowing statutes as encompassing a statute of repose. *Id.* at 23-27.

The trial court rejected New Werner's assertion in its motions for summary judgment that the borrowing statute includes borrowing another state's statute of repose. Instead, the trial court held that "as a matter of law," the borrowing statute "is explicitly limited to statutes of limitations and does not include statutes of repose." Trial Court Opinion, 9/24/2019, at 5. The trial court found the language of the borrowing statute to be "clear" and applicable only to statutes of limitation, emphasizing that the "very title of the Pennsylvania law, the 'Uniform **Statute of Limitations** on Foreign Claims Act,' precludes its application to statutes of repose." *Id.*, *citing* 42 Pa.C.S. § 5521(a) (emphasis in original). According to the trial court, "the intent of the [borrowing statute] is to prevent forum shopping for a jurisdiction that affords greater rights or a longer statute of limitations, not to dismiss cases that were timely filed with the statutes of limitations of both states." *Id.* at 6.

It appears that the issue of whether the Pennsylvania borrowing statute includes statutes of repose is an issue of first impression within this Commonwealth. To resolve this dispute, we must interpret the language of the borrowing statute. "We review a question of statutory interpretation *de novo*, and the scope of our review is plenary." **Frempong v. Richardson**, 209 A.3d 1001, 1009 (Pa. Super. 2019). We also keep the following principles in mind.

> When engaging in statutory construction, a court's duty is to give effect to the legislature's intent and to give effect to all of a

statute's provisions. 1 Pa.C.S. § 1921(a). The best indication of legislative intent is the plain language of the statute. In ascertaining the plain meaning, we consider the statutory language in context and give words and phrases their common and approved usage. When statutory language is clear and unambiguous, courts must give effect to the words of the statute and must not disregard the text to implement its objective. 1 Pa.C.S. § 1921(b). Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent. 1 Pa.C.S. § 1921(c).

*Roverano v. John Crane, Inc.*, 226 A.3d 526, 535 (Pa. 2020) (quotation marks and some citations omitted). Furthermore, while "[t]he title and preamble of a statute may be considered in the construction thereof, … [t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof." 1 Pa.C.S. § 1924.

Our Supreme Court has explained the distinctions between a statute of repose and a statute of limitations by quoting the following passage from the United States Supreme Court.

Statutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts. Both types of statute can operate to bar a plaintiff's suit, and in each instance time is the controlling factor. There is considerable common ground in the policies underlying the two types of statute. But the time periods specified are measured from different points, and the statutes seek to attain different purposes and objectives....

In the ordinary course, a statute of limitations creates "a time limit for suing in a civil case, based on the date when the claim accrued." Black's Law Dictionary 1546 (9th ed. 2009) (Black's); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013) ("As a general matter, a statute of limitations begins to run when the cause of action

- 11 -

"'accrues' —that is, when 'the plaintiff can file suit and obtain relief'"). Measured by this standard, a claim accrues in a personal-injury or property-damage action "when the injury occurred or was discovered." Black's 1546....

A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. A statute of repose "bar[s] any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury." Black's 1546. The statute of repose limit is "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." 54 C.J.S., Limitations of Actions § 7, p. 24 (2010) (hereinafter C.J.S.). The repose provision is therefore equivalent to "a cutoff," ***Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson***, 501 U.S. 350, 363 (1991), in essence an "absolute ... bar" on a defendant's temporal liability, C.J.S. § 7, at 24.

Although there is substantial overlap between the policies of the two types of statute, each has a distinct purpose and each is targeted at a different actor. Statutes of limitations require plaintiffs to pursue "diligent prosecution of known claims." Black's 1546. Statutes of limitations "promote justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." ***Railroad Telegraphers v. Railway Express Agency, Inc.***, 321 U.S. 342, 348-349 (1944). Statutes of repose also encourage plaintiffs to bring actions in a timely manner, and for many of the same reasons. But the rationale has a different emphasis. Statutes of repose effect a legislative judgment that a defendant should "be free from liability after the legislatively determined period of time." C.J.S. § 7, at 24; ***see also School Board of Norfolk v. United States Gypsum Co.***, 360 S.E.2d 325, 328 (Va. 1987) ("[S]tatutes of repose reflect legislative decisions that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability." (internal quotation marks omitted)). Like a discharge in bankruptcy, a statute of repose can be said to provide a fresh start or freedom from liability.

*Dubose v. Quinlan*, 173 A.3d 634, 643-45 (Pa. 2017) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 7-9 (2014)) (some citations altered).

"Another distinguishing characteristic is the corresponding legal effect of each statute." *Graver v. Foster Wheeler Corp.*, 96 A.3d 383, 387 (Pa. Super. 2014). In Pennsylvania, "statutes of limitations are a form of procedural law that bar recovery on an otherwise viable cause of action. Conversely, statutes of repose operate as substantive law by extinguishing a cause of action outright and precluding its revival." *Id.* (citations omitted). *Accord Freeman v. Williamson*, 890 N.E.2d 1127, 1133 (Ill. App. 2008) (holding that the Illinois statute of repose differs from a statute of limitations in that the statute of repose is substantive rather than procedural).

The statutory phrase at issue in the instant case, "period of limitation," plainly invokes a temporal aspect. Because both statutes of repose and statutes of limitation limit a plaintiff's rights due to time, we agree with New Werner that the term "period of limitation" is broad enough to encompass either type of statute. But New Werner's argument fails to account for the remainder of the words in the borrowing statute. "When interpreting a statute, courts must presume that the legislature did not intend any statutory language to exist as mere surplusage; consequently, courts must construe a statute so as to give effect to every word." *Commonwealth by Shapiro v. Golden Gate National Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018). The borrowing statute refers to a "period of limitation applicable

to a claim **accruing** outside this Commonwealth." 42 Pa.C.S. § 5521(b). "Accrual occurs when the right to institute a suit arises, typically when the plaintiff suffers harm." *Graver*, 96 A.3d at 386. A statute of limitation is a period of limitation that begins upon the accrual of a claim. *Dubose*, 173 A.3d at 643-45. While a statute of repose "limits the time within which an action may be brought," it is "not related to the accrual of any cause of action." *Burlingame v. Dagostin*, 183 A.3d 462, 466 (Pa. Super. 2018) (citing *Gilbert v. Synagro Central, LLC*, 131 A.3d 1, 15 (Pa. 2015)).

The legislature's use of the phrase "period of limitation" in connection with the phrase "applicable to a claim accruing outside this Commonwealth," suggests that the legislature intended to include only statutes of limitations and not statutes of repose because only statutes of limitations are related to accrual of a claim. While this meaning is most likely, it is reasonably conceivable that once the claim accrued and the lawsuit was instituted the legislature intended to apply any period of limitation to the claim. Accordingly, there is some ambiguity in the wording of the statute. *See Scioli Turco, Inc. v. Prioleau*, 207 A.3d 346, 351 (Pa. Super. 2019) ("A term is ambiguous if, when it is read in context, it has more than one reasonable interpretation.").

Nevertheless, the short title puts any ambiguity to rest. The legislature chose to instruct that the borrowing statute be known as the "Uniform **Statute of Limitations** on Foreign Claims Act." 42 Pa.C.S. §

5521(a). A statute of limitations is a legal term of art that, as discussed *supra*, differs from a statute of repose. **See** 1 Pa.C.S. § 1903 ("[T]echnical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition."); **In re Vencil**, 152 A.3d 235, 242 (Pa. 2017) ("It is axiomatic that words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary.") (citation and brackets omitted).

We are not convinced by New Werner's efforts to persuade us to disregard the plain language of all of the words of the statute in context with the short title. The legislature specifically referenced accrual, which is a term applicable only to statutes of limitations. Moreover, notwithstanding this Court's recognition that the purpose of the borrowing statute is to avoid a plaintiff from obtaining greater rights than available in the state where the cause of action arose, we cannot ignore the legislature's explicit and unambiguous use of the term statute of limitations in the short title. **See** 1 Pa.C.S. § 1924 ("The title and preamble of a statute may be considered in the construction thereof."); **Id.** at § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Furthermore, *Gwaltney*, the case repeatedly quoted by New Werner, is not helpful to its argument. The case did not involve a statute of repose, and in context the quote New Werner relies upon is related to the statute of limitations.

> Borrowing statutes similar to the one adopted in Pennsylvania have been enacted for the following general reasons: (1) to create a uniform system of conflict of laws dealing with **statutes of limitations**; (2) to prevent forum shopping; (3) to remove the possibility of perpetual liability; and (4) to benefit residents of the enacting state. The primary effect of borrowing statutes is to prevent a plaintiff from gaining more time to bring an action merely by suing in a forum other than the forum where the cause of action accrued. **The provisions of Pennsylvania's borrowing statute unequivocally evince the legislative intent to prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose.**
>
> Pennsylvania's borrowing statute provides that for claims accruing outside of Pennsylvania, the period of limitations shall be prescribed by the limitations period of the place where the claim accrued or by the law of Pennsylvania, whichever is shorter. Under Pennsylvania law, a claim accrues when and where the injury is sustained. The accident occurred in Tennessee; hence, the cause of action accrued in Tennessee. Pursuant to the Pennsylvania borrowing statute, **the Tennessee one year statute of limitations is the proper limitations period to be applied** in the case *sub judice*.

*Gwaltney*, 564 A.2d at 503 (citations omitted; emphasis added).

Nor are we persuaded by New Werner's citation to various out-of-state cases holding that certain other states' borrowing statutes include statutes of repose. **See** Defendants' Brief at 23-27 (referring to court decisions in Delaware, California, Illinois, New York, Wisconsin, and Texas, which have interpreted their respective states' borrowing statutes to include statutes of

repose).  None of the statutes in these other states is identical to Pennsylvania's borrowing statute, and New Werner makes no attempt to argue that the differences are insignificant.[6]  Furthermore, the inclusion of

---

[6] For example, the borrowing statutes in Delaware, California, and Illinois all refer to claims that have arisen as opposed to accrued.  10 Del. C. § 8121 (referring to "a cause of action [that] arises outside of this [s]tate," and not permitting the action to proceed after the "expiration of … the time limited by the law of the state … where the cause of action arose"); Cal. Civ. Pro. Code § 361 (referring to "a cause of action [that] has arisen in another [s]tate … and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time…"); 735 IL ST CH 5/13-210 ("When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State.").

New York's borrowing statute focuses on accrual but does not mention the statute of limitations.  *See* NY CPLR § 202 ("An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.").

Wisconsin's statute also refers to statutes of limitation in the title and uses the term period of limitation, but it does not refer to accrual.  Wis. Stat. § 893.07 ("Application of foreign statutes of limitation (1) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state. (2) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.").

Texas's statute has different wording from Pennsylvania's statute entirely. *See* TX CIV. PRAC. & REM. § 71.031(a) ("Act or Omission Out of State (a) An action for damages for the death or personal injury of a citizen of this state, of the United States, or of a foreign country may be enforced in the courts of this state, although the wrongful act, neglect, or default causing

*(Footnote Continued Next Page)*

statutes of repose in borrowing statutes is by no means universal in other jurisdictions. *See, e.g.*, *Rice v. Dow Chemical Co.*, 875 P.2d 1213, 1217 (Wash. 1994) ("We hold that statutes of repose do not fall under the statute of limitations borrowing statute, RCW 4.18.020, but instead may raise a conflict of substantive law."); *Consolidated Grain & Barge Co. v. Structural Systems, Inc.*, 212 P.3d 1168, 1175-76 (Okla. 2009) ("Because Oklahoma categorizes statutes of limitation as procedural law that operates on plaintiff's remedy and statutes of repose as substantive law that destroys plaintiff's right to recover damages in a cause of action, we answer that the phrase 'period of limitation' in Oklahoma's borrowing statute, 12 O.S.2001, § 105, should not be construed to include the ten-year period in Oklahoma's statute [of repose] relating to construction torts, 12 O.S.2001, § 109.").

*(Footnote Continued)* ————————

the death or injury takes place in a foreign state or country, if: (1) a law of the foreign state or country or of this state gives a right to maintain an action for damages for the death or injury; (2) the action is begun in this state within the time provided by the laws of this state for beginning the action; (3) for a resident of a foreign state or country, the action is begun in this state within the time provided by the laws of the foreign state or country in which the wrongful act, neglect, or default took place.").

 As our sister state's high court has observed,

> [a] review of the law in other jurisdictions has revealed other states have different borrowing statutes, and thus, various analytical approaches are utilized in applying the differing statutes. … Regarding the different methodologies used in other jurisdictions, we note that it is difficult to formulate a legal principle capable of easy application.

*Hayes v. Roberts & Schaefer Co*., 452 S.E.2d 459, 461-62 (W.Va. 1994).

To the extent that analysis of borrowing statutes in other states is helpful, such analysis should focus on the statutes that, like Pennsylvania's, are modeled on the Uniform Statute of Limitations on Foreign Claims Act of 1957. Section 1927 of the Statutory Construction Act provides that "[s]tatutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." 1 Pa.C.S. § 1927. This means that when we construe a uniform law that has ambiguous language, "this Court must consider the decisions of our sister states who have adopted and interpreted such uniform law and must afford these decisions great deference." *Sternlicht v. Sternlicht*, 876 A.2d 904, 911 (Pa. 2005). While the other state's law is not binding, it may serve as persuasive authority. *Century Indemnity Co. v. OneBeacon Insurance Co.*, 173 A.3d 784, 792 n.14 (Pa. Super. 2017).

Besides Pennsylvania, only two other states, Oklahoma and West Virginia, adopted the Uniform Statute of Limitations on Foreign Claims Act, a uniform statute approved by the uniform law committed in 1957.[7] *Consolidated Grain & Barge Co*., 212 P.3d at 1174 n.10. The goal of the Uniform Statute of Limitations on Foreign Claims Act was to standardize and simplify borrowing statutes around the United States that had sprung up to

---

[7] Michigan also had adopted the uniform statute, but it repealed and replaced it in 1978. *See* Mich. Comp. Laws. § 600.5861.

deal with the problem of plaintiffs shopping for a forum that provided a longer period in the forum's statute of limitations. Prefatory Note to the Uniform Conflict of Laws–Limitations Act of 1982, 12 U.L.A. 156. However, the Uniform Statute of Limitations on Foreign Claims Act "'achieved no general adoption, and was officially withdrawn in 1978[,]' in part because of 'its abrupt harshness.'" **Willey v. Bracken**, 719 S.E.2d 714, 718 (W.Va. 2010) (citing **McKinney v. Fairchild Int'l, Inc.**, 487 S.E.2d 913, 919-20 (W.Va. 1997) (citing Prefatory Note to the Uniform Conflict of Laws–Limitations Act of 1982, 12 U.L.A. 156)). Despite the withdrawal of the Uniform Statute of Limitations on Foreign Claims Act in 1978, Pennsylvania has not amended its borrowing statute.[8]

Like Pennsylvania, West Virginia has not decided whether its borrowing statute includes statutes of repose within the term "period of limitation." However, the Supreme Court of Oklahoma has considered the issue and decided it does not, at least as to the particular statute of repose at issue in

---

[8] West Virginia's borrowing statute also remains unchanged. W. Va. Code § 55-2A-2 ("The period of limitation applicable to a claim accruing outside of this state shall be either that prescribed by the law of the place where the claim accrued or by the law of this state, whichever bars the claim."); **Willey**, 719 S.E.2d at 718. Oklahoma's statute was amended in 1970 to make the effect less harsh. 12 O.S. § 105 ("The period of limitation applicable to a claim accruing outside of this state shall be that prescribed either by the law of the place where the claim accrued or by the law of this state, whichever last bars the claim."); **Consolidated Grain**, 212 P.3d at 1174 (explaining that the borrowing statute was amended in 1970 to apply the period of limitation that was the longer as opposed to the shorter).

the case.[9] **Consolidated Grain**, **supra**. The Oklahoma court classified the Oklahoma borrowing statute as a "procedural law that applies to time periods that operate upon the remedy," and reasoned that "[b]ecause Oklahoma categorizes statutes of limitation as procedural law that operate[] on plaintiff's remedy and statutes of repose as substantive law that destroys plaintiff's right to recover damages in a cause of action …. [T]he phrase 'period of limitation' in Oklahoma's borrowing statute" did not include the statute of repose at issue therein. **Consolidated Grain**, 212 P.3d at 1175-76. The Oklahoma Supreme Court also noted the borrowing statute's reference to the statute of limitations in the title and the reference to accrual. **Id.** The court explained that in Oklahoma, "[a]ccrual is a condition that triggers an ordinary statute of limitation, affecting the remedy and not the right to a cause of action." **Id.** at 1175. It concluded that, in context, Oklahoma's borrowing statute intended "to provide a time period that operates on the remedy and not on the right to an action for damages." **Id.**

Like Oklahoma, Pennsylvania views statutes of limitations as procedural laws that bar a party's right to a remedy, and statutes of repose as substantive laws that "wholly extinguish a party's cause of action upon the expiration of the time period." **City of Philadelphia v. City of**

---

[9] The Oklahoma Supreme Court analyzed the post-1970 amended version of its borrowing statute, which, as noted *supra*, does deviate from Pennsylvania's version. Nevertheless, such deviations are not relevant to the analysis or conclusion by the Oklahoma Supreme Court and are not relevant for our comparison purposes here.

***Philadelphia Tax Review Bd. ex rel. Keystone Health Plan East, Inc.,***
132 A.3d 946, 952 (Pa. 2015). Accordingly, we find the Oklahoma Supreme Court's analysis of Oklahoma's substantively similar statute to be persuasive, and the similarities to Pennsylvania law further convince us the Pennsylvania legislature intended the phrase "period of limitation" in Pennsylvania's borrowing statute to include only statutes of limitations, not statutes of repose. Given the reference to accrual, the short title of the statute, and the purpose of the uniform law, we affirm the trial court's order declining to borrow Illinois's statute of repose and denying the motions for summary judgment.

## **Application of the Illinois Statute of Repose to the Strict Liability Claim Against New Werner Through Choice of Law Analysis**

New Werner next asks us to decide whether the trial court erred by not applying Illinois's statute of repose under a choice-of-law analysis. It argues the trial court erred by treating Illinois's statute of repose as a procedural law, and asserts there is a true conflict between the law of Illinois and Pennsylvania regarding repose because Illinois adopted a defendant-protective rule and Pennsylvania protected plaintiffs by not adopting such a rule. Defendants' Brief at 30-32.

New Werner argues Illinois law should also apply on the issue of whether New Werner, as a purchaser of Old Ladder Co.'s assets in 2007, could be held liable for the ladder designed, manufactured, and sold before New Werner came into existence as an entity. ***Id.*** It notes that

Pennsylvania recognizes the product-line exception to the general rule, providing for potential liability when the asset purchaser maintains the same product line. *Id.* at 33-34. According to New Werner, Illinois does not recognize this exception. *Id.* New Werner argues that a true conflict exists between Pennsylvania's pro-consumer rule and Illinois's pro-business limitations on liability.[10] *Id.* at 34.

Furthermore, because there is a true conflict between the states' laws, New Werner argues that Illinois law should apply because the injury occurred in Illinois, and Illinois has more interest in having its laws applied and the more significant relationship to the occurrence and parties. *Id.* at 36. It points out that the ladder was manufactured and sold in Illinois,

---

[10] As the trial court explained,

> Both Pennsylvania and Illinois have a general rule that when one corporation sells its assets to another corporation, the assets are transferred free and clear of all liabilities except valid liens and security interests. *See* [*Schmidt v. Boardman Co.*], 11 A.3d 924 (Pa. 2011); *see also Hernandez v. Johnson Press Corp.*, 388 N.E.2d 778 (Ill. App. 1979). However, Pennsylvania and Illinois have carved out different exceptions to this rule that reflect the states' divergent governmental interests.
>
> Pennsylvania law provides that [New Werner] may be liable under the successor-in-interest rule for acquired product lines, a consumer-friendly approach. ...
>
> Illinois law only provides for liability if a *de facto* merger occurred when the product line was acquired, a more business-friendly rule that places a higher burden on [Kornfeind].

Trial Court Opinion, 12/5/2019, at 7-8.

Kornfeind resides in Illinois, and Kornfeind purchased and used the ladder in Illinois. *Id.* New Werner emphasizes that Old Ladder Co., the manufacturer, no longer exists, and New Werner, a Delaware LLC, "had nothing to do with the design of the ladder, or its manufacture, sale[,] or distribution." *Id.* at 36-37. New Werner argues that Illinois has an interest in applying its pro-business laws to businesses that operate within its borders, whereas Pennsylvania has no interest because Old Ladder Co. no longer exists and New Werner is an out-of-state entity, which did not exist until years after the ladder was manufactured and sold. *Id.* at 39.

New Werner finally argues that the trial court erred by concluding that the location of the design was relevant to the analysis and dispute the trial court's assertion that a choice-of-law analysis was premature due to the dispute over the design location. *Id.* at 43. New Werner asserts that the location of the design has no bearing in a strict liability matter; what matters, according to New Werner, is the condition of the product, and only Illinois has an interest in addressing a product that was manufactured and sold within its borders. *Id.* at 44-46.

Our Supreme Court recently described the standard courts must use when analyzing whether a conflict of law exists.

> Courts conduct a choice-of-law analysis under the choice-of-law rules of the forum state. Pennsylvania courts first consider whether a "true conflict" exists between the two states. This is because in some instances the purported conflict is ultimately revealed to be a "false conflict" – meaning that the laws of both

states would produce the same result, or that one of the states has no meaningful policy-based interest in the issue raised.

***Melmark, Inc. v. Schutt by & Through Schutt***, 206 A.3d 1096, 1104 (Pa. 2019) (citations omitted).

If there is a true conflict, the court then moves to the next stage of the inquiry.  As this Court has explained,

> [i]n addressing which substantive law to apply, we employ the conflict-of-law principles that our High Court framed in ***Griffith v. United Air Lines, Inc.***, [203 A.2d 796 (Pa. 1964)].  In ***Griffith***, our Supreme Court altered its approach in determining which substantive law to apply in tort cases. Prior to that decision, Pennsylvania followed the *lex loci delicti* rule, which applied the substantive law of the place where the tort was committed. ***Id.*** at 801. However, the High Court abandoned that mechanical approach in favor of a methodology that combined the "government interest" analysis and the "significant relationship" approach of sections 145 and 146 of the Restatement (Second) of Conflicts[.]
>
> ***
>
> S[ubs]ection 145(2) of the Restatement (Second) of Conflicts sets forth the contacts to be considered in applying the analysis required under ***Griffith***. They include:
>
> > (a) the place where the injury occurred;
> >
> > (b) the place where the conduct causing the injury occurred;
> >
> > (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
> >
> > (d) the place where the relationship, if any, between the parties is centered.
>
> Restatement (Second) of Conflict of Laws § 145 (1983).

- 25 -

We evaluate these four factors mindful of the overarching choice-of-law principles enumerated in § 6 of the Restatement (Second). Those considerations include the following:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of the other interested states and the relevant interests of those states in determination of a particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability and uniformity of result; and

(g) ease in the determination and application of the law to be applied.

*Id.* § 6.

***Stange v. Janssen Pharmaceuticals, Inc.***, 179 A.3d 45, 64-65 (Pa. Super. 2018) (some citations omitted).

Moreover, [Section] 146 of the Restatement (Second) establishes a presumption in personal injury cases that favors the application of the law of the state where the injury occurred unless another state has a more significant relationship to the occurrence and the parties. That section provides:

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in [Section] 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

***Marks v. Redner's Warehouse Markets***, 136 A.3d 984, 988 (Pa. Super. 2016) (citing Restatement (Second) of Conflict of Laws § 146 (1983)).

In the instant case, the trial court determined that it was premature to conduct a choice-of-law analysis, reasoning that all of Kornfeind's claims center around the design of the ladder. New Werner insists that the ladder was designed in Illinois, which is where it was manufactured. New Werner's Motion for Summary Judgment, 1/7/2019, at ¶ 2. Kornfeind, on the other hand, counters with evidence he says demonstrates that the ladder was designed at Old Ladder Co.'s headquarters in Pennsylvania. Kornfeind's Response to Motion for Summary Judgment, 2/6/2019, at ¶2; Kornfeind's Memorandum in Support of Response to Motion for Summary Judgment, 2/6/2019, at 37 (citing deposition testimony, documents, design drawings, and labeling indicating that the ladder was designed in Pennsylvania). The trial court deemed the location of the design to be a dispute of material fact, rendering it unable to resolve at the summary judgment stage which state had the more significant relationship to the action. Trial Court Opinion, 9/24/2019, at 9-11.

Kornfeind is a resident of Illinois. He purchased the ladder in Illinois. He was injured in Illinois. Under the presumption set forth in section 146 of the Restatement, Illinois very well may be the state law that should apply. However, we agree with the trial court that the site of the conduct at issue – *i.e.*, the alleged negligent design – may influence the analysis of whether

Illinois or Pennsylvania has a more significant relationship to the action. New Werner is not incorporated in Illinois or Pennsylvania, but conducts business in both states. Old Ladder Co. was a Pennsylvania corporation headquartered in Pennsylvania. Old Ladder Co. no longer exists, but the purchaser of its assets, New Werner, still operates in Pennsylvania and had corporate headquarters in Pennsylvania at the time that the suit was filed.

Although Defendants stress Kornfeind's lack of personal connection to Pennsylvania, which state has the most significant relationship is not as clear-cut as New Werner portrays in its argument. While where the product was designed may not be determinative, we cannot say at this stage that it would not have an impact upon the choice-of-law analysis. *See Melmark*, 206 A.3d at 1107 (noting that "the overriding consideration is which state has 'a priority of interest in the application of its rule of law' so as to vindicate the policy interests underlying that law" but "[b]ecause of the focus on competing policies, such analysis tends to be fact-sensitive"). Both of the parties cite to a myriad of cases to support their respective arguments, but neither points to a negligent design case where a product was designed in a different state from where it was manufactured. Both Kornfeind's strict product liability and negligence claims focus on the lack of safety features in the design; if the product was designed in Pennsylvania by a Pennsylvania corporation, the trial court may find Pennsylvania has more of an interest in ensuring that its policies behind its laws are achieved, and

more of an interest in potentially holding New Werner accountable for Old Ladder Co.'s actions as a successor-in-interest. Accordingly, we discern no abuse of discretion or error of law in the trial court's denial of summary judgment based upon a dispute of material fact about the location of the design.

**Negligence Claims Against New Werner**

In its third issue, New Werner argues the trial court erred by denying its motion for summary judgment because Kornfeind failed to establish negligence claims against it. Defendants' Brief at 51. Specifically, New Werner argues it did not exist at the time the ladder was designed, manufactured, or sold to Kornfeind, and its purchase of Old Ladder Co's assets does not render them liable for any negligence by Old Ladder Co. in the past. *Id.* at 52-53. It relies heavily on an April 26, 2007 bankruptcy order in Old Ladder Co.'s bankruptcy, claiming that the order prohibits New Werner from being held liable due to any negligence by Old Ladder Co. *Id.* at 53.

In the order dated April 26, 2007, the bankruptcy court authorized the sale of Old Ladder Co.'s assets to New Werner. New Werner's Motion for Summary Judgment, 1/7/2019, at Exhibit E. In its motion, New Werner quoted the following language from the order in support of its argument that it could not be liable for Kornfeind's injuries.

> [New Werner] is not assuming nor shall it or any affiliates of
> [New Werner], be in any way liable or responsible, as a

successor or otherwise, for any liabilities, debts or obligations of [Old Ladder Co.] in any way whatsoever relating to or arising from the [Old Ladder Co.'s] ownership or use of the purchased assets prior to the consummation of the transaction."  at ¶ 9

New Werner's Motion for Summary Judgment, 1/7/2019, at 23 (quoting Exhibit E at ¶ 9).

The trial court interpreted the order as applying to liabilities occurring prior to the transaction, and held that the bankruptcy order did not free New Werner from liability because Kornfeind's injury occurred after entry of the order.  Trial Court Opinion, 12/4/2019, at 9 n.1.  It also noted that New Werner did not account for any potential state law successor-in-interest liability theories separate from federal bankruptcy law.  *Id.*

As New Werner did in its motion for summary judgment, it simply assumes in its brief that the bankruptcy order overrides any basis for successor liability under state law without any further analysis.  Defendants' Brief at 53.  On appeal, New Werner now points to a different portion of the bankruptcy order, which states that the assets being purchased shall be transferred to New Werner "free and clear of … any claim, whether arising prior to or subsequent to the commencement of these bankruptcy cases, arising under the doctrine of successor liability."  Defendants' Brief at 54 (quoting New Werner's Motion for Summary Judgment, 1/7/2019, at Exhibit E at ¶ 8).

Even if New Werner were correct that the bankruptcy order intended to discharge New Werner of liability for Old Ladder Co.'s negligence, the law

is not as clear cut as New Werner presents it. Multiple courts have held that a bankruptcy order does not "preempt all possible future successor liability claims" and cannot possibly discharge the claims of individuals who did not suffer injury prior to the bankruptcy, because such individuals would have no notice of the bankruptcy in violation of their due process rights. ***Schwinn Cycling & Fitness Inc. v. Benonis***, 217 B.R. 790, 796-97 (N.D.Ill. 1997) (holding whether an asset purchaser is a successor in interest under a bankruptcy order does not determine whether the asset purchaser is a successor in interest under state law); ***see also, e.g.***, ***In re Grumman Olson Industries, Inc.***, 467 B.R. 694, 707 (S.D.N.Y. 2012) ("Because parties holding future claims cannot possibly be identified and, thus, cannot be provided notice of the bankruptcy, courts consistently hold that, for due process reasons, their claims cannot be discharged by the bankruptcy courts' orders."); ***R.C.M. Exec. Gallery Corp. v. Rols Capital Co.***, 901 F. Supp. 630, 637 (S.D.N.Y. 1995) ("[T]here is no federal preemption of state law successor liability merely because the sale of assets occurred in a bankruptcy proceeding."). New Werner fails to set forth any law regarding the interplay between federal bankruptcy law and state successor liability. Therefore, at this juncture, New Werner has not convinced this Court that the trial court erred or abused its discretion in denying summary judgment on this basis.

New Werner further posits that even if it could be liable under a successor-in-interest theory under state law notwithstanding the bankruptcy order, such a theory would be limited to a product-line exception to the general rule against successor liability, and such a theory is limited only to strict-liability claims under Pennsylvania law and is not recognized by Illinois law. *Id.* at 53-54. Kornfeind points out that New Werner did not raise this argument as a basis for summary judgment in its motion. Kornfeind's Brief at 76-77. We agree. In its motion, New Werner argued it was not liable at all based upon the bankruptcy order and the lack of the product line exception under Illinois law. New Werner's Motion for Summary Judgment, 1/7/2019, at 10-13. It did not move for the trial court to enter judgment as a matter of law on Kornfeind's negligence claim against it under Pennsylvania law. Because it did not give the trial court the opportunity to grant the relief it seeks in the first instance, it has failed to preserve this issue for appellate review. Therefore, the issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

**Conclusion**

In sum, we conclude that the trial court erred by denying Home Depot's motion for summary judgment; Kornfeind has not produced non-speculative evidence he was injured by a ladder sold by Home Depot. In an issue of first impression, we hold that Pennsylvania's borrowing statute does

not encompass statutes of repose. Therefore, the trial court did not err by declining to grant summary judgment based upon Illinois's statute of repose, because Pennsylvania's borrowing statute does not require its application. The trial court also did not err or abuse its discretion by declining to grant summary judgment based upon the existence of a genuine dispute of material fact regarding the location of the ladder's design, as the location may shed light on how to balance the interests of Pennsylvania and Illinois in a conflict-of-law analysis. Finally, the trial court did not err or abuse its discretion by denying New Werner's motion for summary judgment as to Kornfeind's negligence claims, as it has failed to establish that the bankruptcy order conveying Old Ladder Co.'s assets free and clear overrode possible application of state law successor-in-interest theories, failed to show material facts are undisputed, and waived certain arguments by failing to raise them as a basis for summary judgment. Accordingly, we reverse the denial of summary judgment to Home Depot and affirm the denial of summary judgment to New Werner.

Order regarding Home Depot reversed. Order regarding New Werner affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 11/9/20