J-A27023-20
J-A27024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BEVERLY SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| U.S. FACILITIES, INC., SCHINDLER | : | No. 3104 EDA 2019 |
| ELEVATOR CORPORATION., | : | |
| THYSSENKRUPP ELEVATOR | : | |
| CORPORATION AND THE | : | |
| PHILADELPHIA MUNICIPAL | : | |
| AUTHORITY | : | |

Appeal from the Order Entered September 17, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170903298,
No. 180703393

| | | |
|---|---|---|
| BEVERLY SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OTIS ELEVATOR COMPANY, | : | No. 3105 EDA 2019 |
| THYSSENKRUPP ELEVATOR | : | |
| CORPORATION, THYSSENKRUPP | : | |
| ELEVATOR MANUFACTURING, INC., | : | |
| AND VERTICAL EXPRESS | : | |

Appeal from the Order Entered September 17, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170903298,
No. 180703393

J-A27023-20
J-A27024-20

BEFORE:    STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                        Filed: June 10, 2021

In these related appeals, Appellant Beverly Smith appeals from two orders entered on September 11, 2019, and two orders entered on September 17, 2019.[1]  In the first September 11, 2019 order (Order 1), the trial court granted summary judgment in favor of Appellee U.S. Facilities, Inc., and against Appellant.  In the second September 11, 2019 order (Order 2), the trial court granted summary judgment in favor of Appellee Schindler Elevator Corporation and against Appellant.  In the first September 17, 2019 order (Order 3), the trial court granted summary judgment in favor of Appellee ThyssenKrupp Elevator Corporation and Appellee ThyssenKrupp Elevator Manufacturing (collectively ThyssenKrupp Appellees) and against Appellant. In the second order entered on September 17, 2019 (Order 4), the trial court granted summary judgment in favor of Otis Elevator Company and against Appellant.[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The propriety of Appellant's notices of appeal is discussed in greater detail below.

[2] Although Philadelphia Municipal Authority was named in the complaint and the captions, it was dismissed from this case on July 9, 2019, and is not a party to either appeal.  Additionally, we note that Vertical Express is a subsidiary of the ThyssenKrupp Appellees.  However, Vertical Express is not a legal entity, and the parties stipulated to dismiss Vertical Express.  Stipulation, 3/13/19.  Accordingly, Vertical Express is not a party to either appeal.

- 2 -

In these appeals, Appellant alleges that the trial court erred in granting summary judgment in favor of Appellees. Specifically, Appellant asserts that the trial court erred or abused its discretion in concluding that expert testimony was required and that Appellant had failed to satisfy the criteria for the application of *res ipsa loquitur*. We affirm the orders at 3104 EDA 2019 and 3105 EDA 2019.

The trial court summarized the relevant facts and procedural history of these related cases as follows:

> [These cases] arose from an elevator malfunction that occurred on August 4, 2016. At that time, Appellant was an employee of the City of Philadelphia, working in the Juanita Kidd Stout Criminal Justice Center ("CJC"). The CJC is owned by the Philadelphia Municipal Authority ("PMA"). Prior to August 4, 2016, the PMA dispossessed itself of the entire premises of the CJC by entering into a lease with the City of Philadelphia (the "City"). In turn, the City entered into a contract with Appellee U.S. Facilities, Inc. ("USF").
>
> Under the agreement between the City and USF the latter agreed, *inter alia*, to: (1) manage the CJC from August 1, 2013 through June 30, 2017; and (2) provide two full-time, certified elevator mechanics. Pursuant to the second item, *supra*, USF entered into a subcontractor agreement with Appellee Schindler Elevator Corporation ("Schindler"). Under the subcontractor agreement between USF and Schindler, Schindler agreed to perform preventative maintenance, inspection, replacement, and repair of parts and equipment of the elevators in the CJC. Schindler performed these services through June of 2016. At that time, USF terminated its agreement with Schindler and entered into a new subcontractor agreement with Appellee ThyssenKrupp Elevator Corporation ("TKEC"). Under the subcontractor agreement between USF and TKEC, TKEC agreed to perform the same services that Schindler had performed, beginning on July 1, 2016.
>
> On August 4, 2016 at approximately 10:30 A.M., Appellant was riding in one of the two elevators in the CJC that are reserved for

- 3 -

employee use. At that time, Deputy Sheriff Paul Owens was riding in the other elevator. Suddenly, the elevator carrying Deputy Sheriff Owens ascended upward at a high rate of speed and crashed through the ceiling of the elevator shaft.[fn1] This crash damaged the ceiling of the elevator shaft, made a loud noise, and caused concrete to fall upon the roof of the elevator carrying Appellant, thus making more loud noises and, allegedly, rocking her elevator. As these events occurred, Appellant "believe[d] that a bomb had exploded, that a terrorist attack may have been underway, and that her life was in danger." Additionally, she was "jostled" by falling concrete, then "unable to extricate herself from the elevator for a substantial time following the accident."

> [fn1] This occurrence rendered Deputy Sheriff Owens paralyzed from the waist down and gave rise to the case ***Paul Owens and Heather Owens h/w v. U.S. Facilities, Inc., et al.***, docketed by the [t]rial [c]ourt under Case ID 170103230. On January 23, 2019, this case settled prior to assignment for trial.

Appellant's inability to extricate herself from the elevator caused her "to panic and become agitated, frightened and mentally traumatized." Allegedly, the jostling of the elevator caused her to sustain "serious and severe injuries including injuries to her neck, back, body and extremities including damage to her nerves, aggravation of previously benign arthritic condition, and causing ongoing pain and disruption of her ability to function"; and, ultimately, to lose her employment.

Investigation into the cause of the accident revealed that eight bolts near the elevator's motor had failed. Those bolts had been removed and reinstalled by Amtech Elevator Company ("Amtech"), now Appellee Otis Elevator Company ("Otis"), in September or October of 2009 when Amtech's employee, Mr. Bernd Reese ("Mr. Reese"), repaired the elevator.

On September 27, 2017, Appellant filed a Complaint (Appellant's "First Complaint") in the Court of Common Pleas of Philadelphia, which named USF, Schindler, TKEC, and the PMA as Defendants.[fn2] The First Complaint included four counts of Negligence, one against each Appellee.

> [fn2] The [t]rial [c]ourt docketed this case, ***Beverley Smith v. U.S. Facilities, Inc., Et Al.***, under Case ID 170903298.

On November 16, 2018, Appellant filed another Complaint (Appellant's "Second Complaint").[fn3] Appellant's Second Complaint recapitulated the First Complaint, but it named 21 additional Defendants. Of those Defendants, two were Appellees Otis and ThyssenKrupp Elevator Manufacturing ("TKEM"). [The trial court referred to Appellee TKEC and TKEM collectively as the ThyssenKrupp Appellees.[3]] Appellant stated claims for Negligence against both of these Appellees.

> [fn3] The [t]rial [c]ourt docketed this case, **Beverly Smith v. Otis Elevator Company, Et Al.**, under Case ID 180703933. . . . "Complaint" refers to Appellant's First Complaint unless otherwise stated.

On January 18, 2019, USF filed a Motion to Consolidate Appellant's two cases. On February 13, 2019, this [c]ourt consolidated the two cases for [all] purposes, including discovery and trial, naming **Beverley Smith v. U.S. Facilities, Inc., Et Al.**, as the lead case. On March 13, 2019, the Parties filed a Stipulation to Amend the Complaint (the "First Stipulation to Amend"), which sought the dismissal of twelve of the 25 Defendants named between both Complaints. On March 15, 2019, the Parties filed a second Stipulation to Amend the Complaint (the "Second Stipulation to Amend"), which sought the dismissal of seven more Defendants. On March 19, 2019, the [c]ourt entered a revised Case Management Order. This Revised Case Management Order established July 1, 2019[,] as the deadline for submission of expert reports. On March 21, 2019, the Honorable Daniel J. Anders approved the First Stipulation to Amend.

On May 15, 2019, Schindler filed its Motion for Partial Summary Judgment with New Matter. Appellant did not file an Answer in opposition to this Motion. On July 1, 2019, the deadline for submission of expert reports passed. By then, Appellant had only submitted one expert report, that of Dr. Burton Weiss, which addressed Appellant's alleged psychological injuries. Appellant did not serve any expert liability report or . . . request any extension from the [c]ourt before the July 1, 2019 deadline.

---

[3] Although the trial court referred to TKEM as an appellee, the parties later stipulated that TKEM is not a party to either appeal and any reference to TKEM should be disregarded. Stipulation, 3105 EDA 2019, 6/12/20.

On June 3, 2019, the PMA filed its Motion for Summary Judgment. Appellant did not file an Answer in opposition. Therefore, on July 9, 2019, this [c]ourt granted the PMA's Motion for Summary Judgment.

On June 11, 2019, the ThyssenKrupp Appellees joined in Schindler's Motion for Partial Summary Judgment. Appellant did not oppose this Motion, either. Therefore, on July 16, 2019, the Honorable Anne Butchart granted Schindler's Motion for Partial Summary Judgment, entering Judgment in favor of "all [Appellees] in this consolidated action and against [Appellant] to the extent that [Appellant] claims that she suffered any physical injury caused by the elevator incident." Thus, from June [16], 2019, Appellant could not have recovered for any of the physical injuries alleged in her Complaints.

From July 22, 2019 through August 6, 2019, Appellees filed four Motions for Summary Judgment. Three of these were filed by the three remaining, individual [Appellees]: USF, Schindler, and Otis. The other was filed by the two remaining ThyssenKrupp [Appellees]: TKEC and TKEM. In their Motions for Summary Judgment, all of the Appellees made substantially the same argument regarding the necessity of expert testimony to establish the causal element of Appellant's Negligence claims. For example, Schindler argued in its Motion for Summary Judgment, that:

> Without expert opinion explaining how the service work performed by Schindler at a remote time before the date of the alleged incident was done in a negligent manner or how it caused or contributed to the failure of the bolts on [the elevator carrying Appellant when the accident occurred, Appellant] cannot meet her burden of proof. . . .

In late August and early September of 2019, Appellant filed nearly identical Answers to Appellees' Motions for Summary Judgment. There, Appellant put forth the following counterargument regarding the necessity of expert opinion to establish causation:

> It is submitted that the facts necessary to establish the nature of the failure of the equipment are all capable of being properly understood, and determined intelligently by jurors, based on the deductions made and inferences drawn from practical experience and common sense, the testimony of Bernd Reese and the documents and photograph produced and attached. . . .

Additionally, in her Answers to Appellees' Motions for Summary Judgment[,] Appellant argued that: (1) the doctrine of *res ipsa loquitur* rendered expert opinion unnecessary in this case, and (2) Appellant's injuries were compensable under controlling case law.[fn10]

> [fn10] This [trial court o]pinion does not reach Appellant's argument regarding the issue of whether her injuries are compensable under controlling case law.

On September 11, 2019, this [c]ourt granted USF's and Schindler's Motions for Summary Judgment, noting that "[Appellant's] case on liability [was] unsupported by any expert evidence." On September 17, 2019, this [c]ourt granted Otis' and the ThyssenKrupp [Appellees'] Motions for Summary Judgment, noting the same.

On September 27, 2019, Appellant filed Motions for Reconsideration of this [c]ourt's September 11, 2019 Orders, granting USF's and Schindler's Motions for Summary Judgment. On September 30, 2019, Appellant filed a Motion for Reconsideration of this [c]ourt's September 17, 2019 Order, granting Otis' Motion for Summary Judgment. On October 2, 2019, this [c]ourt denied Appellant's Motions for Reconsideration of this [c]ourt's September 11, 2019 Orders, and of its September 17, 2019 Order, concerning Otis. On October 7, 2019, Appellant filed a Motion for Reconsideration of this [c]ourt's September 17, 2019 Order, granting the ThyssenKrupp Appellees' Motion for Summary Judgment. On October 10, 2019, this [c]ourt denied Appellant's Motion for Reconsideration of its September 17, 2019 Order, regarding the ThyssenKrupp Appellees.

On October 11, 2019, Appellant appealed this [c]ourt's September 11, 2019 and September 17, 2019 Orders. On October 18, 2019, this [c]ourt issued an Order upon Appellant pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), mandating service upon this [c]ourt of a concise statement of errors complained of on appeal. On November 14, 2019, Appellant filed her Statement of Errors Complained of on Appeal.

Trial Ct. Op., 11/25/19, at 1-8 (citations and some footnotes omitted).

**Appellate Jurisdiction**

Before we address the merits of these appeals, we must resolve whether the appeals should be quashed pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and if we may address the merits of the appeals due to Appellant filing two appeals from four separate orders entered on two different dates.[4]  As indicated in the trial court's opinion, Appellant filed two separate complaints, the first docketed at 170903298 and the second at 180703393.  Complicating these appeals, Appellant named Appellee TKEC, in her complaint at 170903298 and TKEM in her complaint at 180703393.  Further, the trial court entered Order 1 and Order 2 in 170903298 on September 11, 2019, which dismissed Appellant's claims against USF and Schindler, respectively.  However, the trial court did not enter Order 3 dismissing Appellant's claim against TKEC until September 17, 2019.  That same day, the trial court also entered Order 4 dismissing Appellant's claim against Otis.

---

[4] Because there were four separate orders, Appellant should have filed four separate appeals.  **See Dong Yuan Chen v. Saidi**, 100 A.3d 587, 589 n.1 (Pa. Super. 2014) (providing that when a party appeals from separate orders entered at the same docket number, the party must file a notice of appeal from each order).  As noted, Appellant filed only two notices of appeal. Although this practice is discouraged, because Appellees have not objected to Appellant having filed only two separate notices of appeal, the period for taking an appeal has expired precluding the filing of proper appeals, and the trial court addressed the issues, we conclude that it is not fatal to Appellant's appeals and decline to quash.  **See id.**  (citing **Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.**, 263 A.2d 448, 453 (Pa. 1970)).

Appellant then separately filed two notices of appeal.[5]  Essentially, it appeared that Appellant challenged Order 1, Order 2, and Order 3, in one appeal, which was docketed at Superior Court docket number 3104 EDA 2019. Appellant's other appeal challenged Order 3 and Order 4, which was docketed at Superior Court docket number 3105 EDA 2019.  Appellant's notices of appeal were identical and each listed both trial court dockets.

On November 22, 2019, this Court issued a rule to show cause why the appeals should not be quashed pursuant to **Walker**.  Appellant filed a timely response and asserted that some of the documents in this matter were filed only at trial court docket 170903298.  Appellant also claimed that the appeal at 3104 EDA 2019 involves only trial court docket number 170903298, and the appeal at 3105 EDA 2019 involves only 180703393.  Resp. to Rule, 11/29/19, at 1-5 (unpaginated).  On December 10, 2019, the rule was discharged and the matter referred to the panel designated to address the merits of the appeal.

In **Walker**, our Supreme Court required the filing of separate notices of appeal where more than one order resolves the issue, arises on more than one docket, or relates to more than one judgment.  **Walker**, 185 A.3d at 977 (citing Pa.R.A.P. 341).  Initially, we note that although Appellant's notices of appeal at 3104 EDA 2019 and 3105 EDA 2019 contain both trial court docket

---

[5] Appellant electronically filed her notices of appeal.  The first was stamped as received on October 11, 2019, at 4:30 p.m., the second on October 11, 2019, at 4:36 p.m.

numbers, we are not required to quash the appeals. **See Commonwealth v. Johnson**, 236 A.3d 1141, 1144 (Pa. Super. 2020) (*en banc*) (overruling **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019), and holding that the inclusion of other docket numbers on a notice of appeal does not require the appeal to be quashed pursuant to **Walker**)), <u>appeal denied</u>, 242 A.3d 304 (Pa. 2020).

Next, we agree with Appellant that the appeal at 3104 EDA 2019 corresponds with trial court docket 170903298, and the appeal at 3105 EDA 2019 corresponds with trial court docket 180703393. Some confusion arises in the proper captioning of these appeal. Specifically, the appeal from the orders in 170903298 properly lies from Orders 1 and 2, entered September 11, 2019, as made final by the entry of Order 3 on September 17, 2019, which disposed of all of Appellant's claims against Appellee TKEC, the last remaining named defendant in Appellant's first complaint. **See** Pa.R.A.P. 341(b)(1); **Estate of Considine v. Wachovia Bank**, 966 A.2d 1148, 1152-53 (Pa. Super. 2009); **see also Walker**, 185 A.3d at 977 n.4 (noting that the holding in **Walker** "has no impact on the rule that a party need only file a single notice of appeal to secure review of all non-final orders that are rendered final and appealable by the entry of a final order" (citation omitted)). However, this technical defect does not affect this Court's jurisdiction over these appeals.[6]

_____

[6] Recently, our Supreme Court held that filing a single notice of appeal from a single order entered at the lead trial court docket number in a consolidated
*(Footnote Continued Next Page)*

Additionally, although we denied Appellant's motion to consolidate the appeals, because the appeals are inseparably related, we dispose of them in a single memorandum.

**Appeal at 3104 EDA 2019**

In the appeal at 3104 EDA 2019, Appellant presents the following issues, which we have reordered as follows:

> 1) Did the trial court err in . . . finding that the absence of an expert's report precluded a finding of a genuine issue of material fact for a jury to consider to defeat the summary judgment application?
>
> 2) Did the trial court err in . . . finding that there was no genuine issue of material fact for a jury to consider as it relates to the causation element of negligence in determining that application of the *res ipsa loquitur* doctrine was inappropriate to defeat the summary judgment application?

Appellant's Brief at 5.[7]  We note that Appellant also mentions that the trial court's ruling infringed upon her right to a jury trial.  *Id.* at 14.  However, a jury trial is not always required, and summary judgment proceedings are

_____

civil matter where all of the record information necessary to adjudicate the appeal exists, and which involves identical parties, claims and issues, is permissible.  ***Always Busy Consulting, LLC v. Babford & Co., Inc.***, ____ A.3d ____, 2021 WL 1134521 (Pa. 2021).  The scenario we are faced with here is slightly different.  As noted, although the trial court consolidated these cases, there was not a single order disposing of Appellant's claims and there was not a single appeal.  Rather, Appellant filed separate appeals from orders at both trial court docket numbers which distinguishes these appeals from ***Always Busy Consulting***.  Nevertheless, as explained above, we conclude that our Court has jurisdiction over these appeals.

[7] For clarity, in our discussion relative to 3104 EDA 2019, our citations to the briefs of the parties correspond to the briefs filed at that docket.

proper to avoid a needless trial. *Woodford v. Ins. Dep't*, 243 A.3d 60, 70 (Pa. 2020). As Appellee TKEC succinctly noted, the issue is not whether Appellant's constitutional right to a jury trial has been violated but whether Appellant presented credible evidence to reach a jury. Appellee TKEC's Brief at 14. Therefore, this claim is encompassed in our determination concerning whether summary judgment was entered properly and will be discussed below.

"In determining whether the [trial] court erred in granting summary judgment, our standard of review is *de novo* and our scope of review is plenary." *Braswell v. Wollard*, 243 A.3d 973, 977 n.3 (Pa. Super. 2020) (citation omitted).

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof of an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Kornfeind v. New Werner Holding Co., Inc.*, 241 A.3d 1212, 1216 (Pa. Super. 2020) (citation omitted). Moreover, in order to prevail in a negligence action, the plaintiff must establish: 1) the defendant owed her a duty; 2) the

defendant breached that duty; 3) the plaintiff suffered actual harm; and 4) there is a causal relationship between the breach of the duty and the harm. ***Z.F.1 ex rel. Parent v. Bethanna***, 244 A.3d 482, 495 (Pa. Super. 2020). "[T]he plaintiff need not exclude every possible explanation of the accident; it is enough that reasonable minds are able to conclude that the preponderance of the evidence shows defendant's conduct to have been a substantial cause of the harm to plaintiff." ***Hamil v. Bashline***, 392 A.2d 1280, 1285 (Pa. 1978) (citation omitted).

## Expert Testimony

Appellant asserts that the trial court erred in its determination that expert testimony was necessary, and therefore, it erred in granting summary judgment in favor of Appellees. Appellant claims that the failure of the elevator was no more complex than a see-saw and that the "elemental force of gravity" does not require expert testimony. Appellant's Brief at 28. Appellant also claims that the deposition of elevator mechanic Bernd Reese, who had worked on the subject elevators in 2009, illustrated that the failure did not involve a description of sophisticated electronics or machinery. ***Id.*** at 29. It is Appellant's position that the event that caused her injury was the rapid ascent of an elevator,[8] and the presence of broken bolts, maintenance,

---

[8] We reiterate that Appellant was not a passenger in the elevator that rapidly ascended. Appellant was in a second elevator that was struck with falling debris after the other elevator failed.

and repair are not determinative of cause; she asserts these facts emphasize "the prospect of negligence." *Id.* Appellant argues that a jury could conclude that given their collective experience using elevators, such an event as here does not occur in the absence of negligence. *Id.* at 44-45. Appellant also asserts the trial court's conclusion was based on non-precedential or inapposite caselaw. *Id.* at 46-57.

Appellees counter that Reese's deposition did not reflect his personal knowledge of the cause of the accident.[9] Appellee USF's Brief at 5; Appellee TKE's Brief at 18. Appellee USF further noted that Reese had no personal knowledge regarding whether the bolts were properly installed, torqued to the proper specifications, loose, or if any third-party performed any maintenance on the elevator between the time he worked on the elevator in 2009, and the date of the accident in 2016. Appellee USF's Brief at 7. Appellee USF asserts that an elevator is a complex machine, and the accident here resulted from a combination of circumstances including the failure of the counterweight system and the failure of the braking system. *Id.* at 9-10. An understanding of these components is not within a juror's typical experience, and the trial court committed no error in concluding that Appellant required an expert. *Id.* at 10-11. Similarly, Appellee Schindler and Appellee TKEC contend that the

_____

[9] We note that Reese's complete deposition does not appear in the record. Portions of the deposition were attached to Appellant's Response to Appellee Schindler's Motion for Summary Judgment, 8/21/19, at Exhibit A. Additionally, Appellant provides only excerpts of Reese's deposition in the reproduced record. *See* R.R. at 1523a.

trial committed no error or abuse of discretion in granting summary judgment because Appellant's claims involve complex issues beyond the purview of the ordinary lay jury's experience. Appellee Schindler's Brief at 17-20; Appellee TKEC's Brief at 15-16.

It is within the discretion of the trial court to determine the need for expert testimony. *See Bergman v. United Servs. Auto. Ass'n*, 742 A.2d 1101, 1105 (Pa. Super. 1999). Moreover,

> [w]hether a necessity [for expert testimony] exists, and whether the witness is qualified, are in the first instance to be determined by the trial [court]. If [the trial court] decides that it is necessary and that the witness is qualified, the questions on review are whether [the trial court] has abused [its] power in so deciding and whether the opinion received was admissible.

*Cooper v. Metro. Life Ins. Co.*, 186 A. 125, 128 (Pa. 1936) (citations omitted). Expert testimony is not required in all negligence cases; however, expert testimony is required "when the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person." *Storm v. Golden*, 538 A.2d 61, 64 (Pa. Super. 1988) (citations omitted). "Expert testimony is often employed to help jurors understand issues and evidence which is outside of the average juror's normal realm of experience." *Young v. Dept. of Transp.*, 744 A.2d 1276, 1278 (Pa. 2000).

The trial court addressed Appellant's need for expert testimony as follows:

> Where a plaintiff's theory of negligence requires analysis "beyond the scope of the average juror's normal experience", expert

testimony is required. *Young*[*v. Dept. of Transp.*], 744 A.2d [1276,] 1278 [(Pa. 2000)]; *see also Reardon v. Meehan*, 227 A.2d 667, 670 (Pa. 1967) ("The employment of testimony of an expert rises from necessity, a necessity born of the fact that the subject matter of the injury is one involving special skill and training beyond the ken of the ordinary layman.")). Thus, for example, Courts of this Commonwealth have held that expert testimony is necessary to establish: (1) the existence of a duty to place signs three miles ahead of a construction zone, *Young*, 744 A.2d at 1278; (2) a deviation from proper and accepted medical practice, *Powell v. Risser*, 99 A.2d 454 (Pa. 1953); *McSorley v. Deger*, 905 A.2d 524, 531-532 (Pa. Super. 2006); (3) negligent highway design, *Tennis v. Fedorwicz*, 592 A.2d 116 (Pa. Cmwlth. 1991); and (4) the exercise of reasonable care and skill in legal practice. *Storm v. Golden*, 538 A.2d 61 (Pa. 1988).

Conversely, expert testimony is not required where the subject matter is "so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even non-professional persons." *Ovitsky v. Capital City Economic Development Corp.*, 846 A.2d 124, 126 (Pa. Super. 2004). Thus, for example, the Superior Court has held that expert testimony is not necessary to prove that a hotel owner breached its duty to plaintiff to provide adequate security inside of its hotel, because "staying in a hotel is a common and familiar experience, such that a juror could utilize his or her common sense to determine whether [the hotel owner's] security measures had been reasonable." *Id.*

Courts of this Commonwealth have not yet ruled on whether expert testimony is necessary to establish causation in every negligence claim that arises from an elevator malfunction. *Burlington Coat Factory of Pennsylvania, LLC v. Grace Const. Management Co., LLC*, 126 A.3d 1010 (Pa. Super. 2015) ("The parties do not challenge the necessity of an expert report on this issue and we do not here express any opinion on whether an expert report is necessary in all cases of alleged elevator malfunction.") However, the trial court has held, and the Superior Court has affirmed, that expert testimony is necessary in an elevator malfunction case that involves misleveling. *DeWitt v. United Elevator Company, et al.*, Philadelphia Court of Common Pleas No. 930101519, *aff'd*, 745 A.2d 49 (Pa. Super. 1999). Specifically, the trial court held that:

> In order to find Defendants negligent, a jury must hear, *inter alia*, expert testimony concerning elevator parts, the rate at which they customarily break down, consequences of such breakdown, customary repair practices in the industry, response time, etc. We imagine a liability expert at the very least would cover these areas and attempt to relate this to mis-leveling. Without expert testimony on elevator components, operation and maintenance, the jury is left to speculate.

*Id.* at 4.

Additionally, the Superior Court has affirmed the trial court where it has acknowledged the importance of expert testimony in an elevator malfunction case. ***Ross v. Society Hill Towers, Eastern Engineering & Elevator, Co., et al.***, Phila. Court of Common Pleas No. 870203671; *aff'd* 667 A.2d 430 (Pa. Super. 1995) ("There was no expert testimony or otherwise presented by the Plaintiff indicating that the breakage of the selector tape was caused by the actions or inactions of Otis while its service contract was in force. Consequently, a nonsuit was properly entered in favor of Otis.").

Here, this Court properly granted Appellees' Motions for Summary Judgment because Appellant failed to establish by a preponderance of the evidence that any of the Appellees' allegedly negligent acts caused Appellant's injuries. Appellant stated a claim for Negligence against each Appellee. Therefore, she needed to establish by a preponderance of the evidence, *inter alia*, that Appellees' conduct caused her alleged damages. To establish that Appellees' conduct caused her damages, Appellant needed expert testimony. This is so because "**how bolts are caused to break and … become loose**", Complaint ¶ 54, requires analysis "beyond the scope of the average juror's normal experience." ***Young***, 744 A.2d at 1278.

Nevertheless, by July 1, 2019, when the deadline for expert reports passed, Appellant had not produced expert testimony regarding causation, nor had she requested an extension of the Discovery deadline. Furthermore, Appellant stated that she intended not to present testimony from a liability expert at trial.

Thus, the absence of evidence on the issue of causation could not be remedied in this case, and this Court properly granted Appellees' Motions for Summary Judgment.

- 17 -

Trial Ct. Op., 11/25/19, at 10-13 (some citations omitted and emphasis added). After review, we agree with the trial court.

Although we cannot conclude that expert testimony is necessary to establish causation in every negligence claim arising from an elevator malfunction, the trial court committed no error in concluding that such testimony was necessary here. In her complaint, Appellant alleged Appellees were negligent in failing to inspect, upgrade, and modernize the elevators, train their employees, and identify defects. Appellant's Compl., 9/27/17, at ¶¶ 27-57. Appellant claimed that Appellees were negligent in their operation, maintenance, and repair of the elevators. *Id.*

However, Appellees asserted that Appellant failed to demonstrate how or why the elevators failed. Appellee Schindler Mot. for Sum. J., 7/22/19, at ¶¶ 19-25; Appellee USF Mot. for Sum. J., 8/6/19, at 10-15. Appellees claimed that without an expert, Appellant is unable to establish what process in the workings of the elevator may have failed and, therefore, unable to prove negligence. *See* Appellee Schindler Mot. for Sum. J., 7/22/19, at ¶¶ 19-25; Appellee USF Mot. for Sum. J., 8/6/19, at 10-15.

Ultimately, we agree with the trial court's analysis and conclusion. Although the decision in *DeWitt* is not binding precedent, this Court may consider decisions from the courts of common pleas for their persuasive value. *See Hirsch v. EPL Techn., Inc.*, 910 A.2d 84, 89 n.6 (Pa. Super. 2006) (citation omitted).

The trial court in ***DeWitt*** explained "[e]levators are complex machines consisting of many parts and mechanisms beyond the average juror's knowledge." ***DeWitt***, at 2. "Materials can wear out or breakdown without negligence being involved." ***Id.*** at 3. Absent expert testimony on the elevator components, operation, and maintenance, the jury is left to speculate. ***Id.***

In the instant case, the trial court was persuaded by the reasoning from ***DeWitt***. Trial Ct. Op., 11/25/19, at 11-14. We conclude that there was no error in the trial court's reliance on ***DeWitt***, and we are persuaded by the reasoning in ***DeWitt*** as well. No one is disputing that elevators are complex machines. Due to this complexity, the trial court opined that the operation, maintenance, rate of customary breakdown, and customary repair, are outside a lay person's life experience. We agree and, therefore, conclude that there was no error of law or abuse of discretion in the trial court's determination that expert testimony was required, and that in the absence of such testimony, Appellant could not establish negligence. Accordingly, we conclude that Appellant cannot satisfy her burden and Appellees are entitled to judgment as a matter of law. ***See Kornfeind***, 241 A.3d at 1216.

### *Res Ipsa Loquitur*

Appellant also contends that the trial court erred in granting Appellees' motions for summary judgment because she satisfied the criteria for the application of *res ipsa loquitur*. Appellant's Brief at 22. Appellant asserts an elevator's malfunction is not something that occurs in the absence of

negligence; therefore, the doctrine of *res ipsa loquitur* applies. **Id.** at 27-42. In support of this argument, Appellant cites **McGowan v. Devonshire Hall Apartments**, 420 A.2d 514 (Pa. Super. 1980). **Id.** at 38-39.

Appellees respond that the trial court correctly concluded that Appellant could not establish the application of *res ipsa loquitur*. Appellee USF's Brief at 14-15; Appellee Schindler's Brief at 24-26; Appellee TKEC's Brief at 24-41. After review, we agree with Appellees and conclude that *res ipsa loquitur* was not applicable.

*Res ipsa loquitur* allows a jury to infer negligence from the circumstances surrounding the injury. **Quinby v. Plumsteadville Family Practice, Inc.**, 907 A.2d 1061, 1071 (Pa. 2006). "*Res ipsa loquitur*, meaning literally 'the thing speaks for itself,' is 'a shorthand expression for circumstantial proof of negligence—a rule of evidence.'" **Id.** (citation omitted). *Res ipsa loquitur* is "a rule that provides that a plaintiff may satisfy [her] burden of producing evidence of a defendant's negligence by proving that [she] has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence. William L. Prosser, Law of Torts §§ 39, 40 (4th ed. 1971) (calling *res ipsa loquitur* a "simple matter of circumstantial evidence")." **Id.** The Restatement (Second) of Torts § 328D expressed the evidentiary theory of *res ipsa loquitur* as follows:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
>
> (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
>
> (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

*Id.* (quoting Rest. (Second) Torts § 328D). "The key to the doctrine is that a sufficient fund of common knowledge exists within a jury of laypersons to justify raising the inference." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1146 (Pa. 2003).

As we discussed above, the negligence Appellant alleged in her complaint involved the integrity, safety, operation, maintenance, and repair of the elevators, and Appellant claimed that Appellees were negligent in failing to inspect, upgrade, and modernize the elevators, train employees, and identify defects. Appellant's Compl., 9/27/17, at ¶¶ 27-57. However, as the trial court explained, there is not "a fund of common knowledge concerning the process by which bolts are caused to break and become loose, from which a layperson could reasonably draw the inference or conclusion that Appellees' acts caused her damages." Trial Ct. Op., 11/25/19, at 14 (citing *Jones v. Harrisburg Polyclinic Hosp.*, 437 A.2d 1134, 1138 (Pa. 1981)).

Appellant asserts that the focus of the accident was the "rapid rise of the elevator." Appellant's Brief at 44. We disagree with this contention. The rapid rise was a result of the elevator's failure; however, as the trial court noted, the only evidence in the record of an actual failure was the broken bolts. Trial Ct. Op., 11/25/19, at 3. While rapid ascent may be commonly understood, the complexity of the workings of an elevator and the means by which bolts in an elevator assembly are caused to break and become loose are not. *See id.* at 14. Appellant has not established the requirements for application of *res ipsa loquitur*. *See Quinby*, 907 A.2d at 1071. Moreover, there is no evidence of a common fund of knowledge to apply *res ipsa loquitur*. *Toogood*, 824 A.2d at 1146. As we discussed above, we agree with the trial court that the events leading to the breaking of the bolts was outside the knowledge of the lay juror. Accordingly, the doctrine of *res ipsa loquitur* did not apply.

Additionally, Appellant argues that *McGowan* stands for the proposition that elevator malfunctions allow for the application of *res ipsa loquitur* and claims that *McGowan* should control the outcome in this matter. Appellant's Brief at 38-39. We disagree.

In *McGowan*, the plaintiff was injured when she stepped into the elevator and the elevator car suddenly "lurched" and caused her to fall to the floor. The plaintiff sued the owner of the building in which the elevator was located, and the building owner joined the elevator maintenance company as

an additional defendant. The case proceeded to a jury trial, and the plaintiff presented her version of what occurred. An elevator inspector licensed by the Commonwealth testified that he believed it was impossible for the accident to have occurred as the plaintiff testified because opening the doors to the elevator would break an electrical circuit, prevent the elevator motor from running, and leave the elevator's brake engaged. Despite conflicting testimony regarding causation, the jury found the building owner liable for the plaintiff's damages, but it found the elevator service company was not liable. The building owner filed an appeal alleging, among other things,[10] that the jury's verdict in favor of the plaintiff and the elevator service company were against the weight of the evidence. After review, a panel of this Court held that the evidence of causation and the building owner's negligent conduct supported the verdict in favor of the plaintiff and against the building owner. This Court concluded that the evidence was completely circumstantial, and the inference of negligence arose through the application of the doctrine of *res ipsa loquitur*. **McGowan**, 420 A.2d at 518.

However, while this Court found that the application of *res ipsa loquitur* was appropriate in **McGowan**, we cannot conclude that it is controlling in the instant case or that it creates a *per se* rule requiring the application of *res ipsa*

---

[10] The building owner further argued on appeal that the trial court abused its discretion with respect to certain evidentiary rulings and in its jury charge. **McGowan**, 420 A.2d at 516. However, the discussion on these issues is not germane to the instant appeal.

*loquitur* when an elevator malfunctions. The decision in **McGowan** does not inform us whether *res ipsa loquitur* was raised at trial or if it was provided by the trial court in its jury instruction. Rather, it appears that this Court discussed *res ipsa loquitur* as a basis for finding that the verdict was not against the weight of the evidence. **McGowan** does not provide that the doctrine of *res ipsa loquitur* applies simply because this case involves an elevator malfunction.

**McGowan** allowed for but did not mandate an inference of negligence with respect to an elevator's malfunction in this Court's evaluation of a challenge to the weight of the evidence. Here, however, even if an elevator's malfunction is considered something that does not occur in the absence of negligence, that alone does not satisfy the test for the applicability of *res ipsa loquitur*. **See Quinby**, 907 A.2d at 1071. Indeed, the second prong of the test requires that other responsible causes are sufficiently eliminated by the evidence. **Id.** As noted above, there is not "a fund of common knowledge concerning the process by which bolts are caused to break and become loose, from which a layperson could reasonably draw the inference or conclusion that **Appellees' acts** caused her damages." Trial Ct. Op., 11/25/19, at 14 (citing **Jones**, 437 A.2d at 1138 (Pa. 1981) (emphasis added)). Therefore, other responsible causes for the failure of the elevator in this case have not been eliminated, and *res ipsa loquitur* is not applicable. **See Vazquez v. CHS Prof'l Practice, P.C.**, 39 A.3d 395, 399 (Pa. Super. 2012) (affirming the trial

court's order granting summary judgment where the plaintiff failed to satisfy the three-prong framework for application of the doctrine of *res ipsa loquitur*).

We conclude that there was no error or abuse of discretion in the trial court's conclusion that the failure of the elevator involved complex issues and was outside the knowledge of the typical person. As such, the trial court correctly held that expert testimony was required and the doctrine of *res ipsa loquitur* was inapplicable. Accordingly, we affirm the order granting summary judgment in favor of Appellees at 3104 EDA 2019.[11]

**Appeal at 3105 EDA 2019**

As we noted above, the trial court consolidated the underlying trial court dockets. Therefore, the relevant facts, procedural history, and standard of review are the same as stated above. Additionally, because the trial court consolidated these cases, it follows that the trial court opinion is identical. *See* Trial Ct. Op., 11/25/19.

---

[11] Appellee TKEC also asserts as an additional basis for granting summary judgment that Appellant cannot recover for her psychological damages because she was not in the "zone of danger." Appellee TKEC's Brief at 47-48 (citing *Sinn v. Burd*, 404 A.2d 672, 677 (Pa. 1979)). The trial court noted that it did not reach this issue. Trial Ct. Op., 11/25/19, at 7 n.10. In light of the fact that the trial court did not address this issue and because we can affirm on a separate basis, we need not address this issue.

Appellant raised the same issues in her brief at 3105 EDA 2019 as she did in her brief at 3104 EDA 2019. **See** Appellant's Brief at 5.[12] Similarly, the argument portion of Appellant's brief is largely identical. **See id.** at 14-58.

Not surprisingly, Appellee Otis provides a counter argument akin to the other? appellees in the appeal at 3104 EDA 2019. Here, Appellee Otis avers Appellant's negligence claims require expert testimony and the doctrine of *res ipsa loquitur* does not apply.[13] Appellee Otis's Brief at 6-12.

### Expert Testimony

In our disposition of the appeal at 3104 EDA 2019, we concluded that there was no error of law or abuse of discretion in the trial court's determination that expert testimony was required, and that in the absence of such testimony, Appellant could not establish negligence. The same analysis and conclusion applies in Appellant's appeal at 3105 EDA 2019. Appellant cannot satisfy her burden, and Appellees are entitled to judgment as a matter of law. **See Kornfeind**, 241 A.3d at 1216.

---

[12] In our discussion relative to 3105 EDA 2019, our citations to the briefs of the parties correspond to the briefs filed at that docket.

[13] Appellee Otis also asserts that Appellant may not recover for her psychological injuries because she was not in the "zone of danger." Appellee Otis's Brief at 12-14 (citing **Burd**, 404 A.2d at 677). As we noted above, the trial court stated that it did not reach this issue. Trial Ct. Op., 11/25/19, at 7, n.10. Similarly, because the trial court did not address this issue and because we can affirm on a separate basis, we need not address this issue.

### *Res Ipsa Loquitur*

Additionally, our conclusion with respect to *res ipsa loquitur* is the same as it was in our disposition of the appeal at 3104 EDA 2019.  Appellant has not established all the requirements for application of *res ipsa loquitur*, and there is no evidence of a common fund of knowledge to apply *res ipsa loquitur*. **Quinby**, 907 A.2d at 1071; **Toogood**, 824 A.2d at 1146.  Accordingly, the doctrine of *res ipsa loquitur* was not applicable.

We conclude that there was no error or abuse of discretion in the trial court's conclusion that the failure of the elevator involved complex issues and was outside the knowledge of the typical person.  As such, the trial court correctly held that expert testimony was required and the doctrine of *res ipsa loquitur* was inapplicable.  Accordingly, we affirm the order granting summary judgment in favor of Appellees at 3105 EDA 2019.

Orders at 3104 EDA 2019 and 3105 EDA 2019 affirmed.

Judge Colins joins the memorandum.

Judge Stabile files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/10/21